UNITED STATES of America,
Appellee,

v.

Chester Ray LOONEY, Appellant.

UNITED STATES of America,
Appellee,

v.

Bobby James SCATES, Appellant.

UNITED STATES of America,
Appellee,

v.

Larry Eugene SEARCY, Appellant.

UNITED STATES of America,
Appellee,

v.

Robert Edward GRUBB, Appellant.

UNITED STATES of America,
Appellee,

v.

Edwin ACEVEDO, Appellant.

UNITED STATES of America,
Appellee,

v.

German ROSARIO, Appellant.

Nos. 73-2002 to 73-2005, 73-2008
and 73-2009.

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1974.

Decided July 29, 1974.

Michael J. Blackford, Charlotte, N. C., for appellant in Nos. 73-2002, 73-2003 and 73-2004.

Jerry W. Whitley, Charlotte, N. C., for appellant in No. 73-2005.

Laurence Jeffrey Weingard, New York City (Muschio, Weingard & Broudny, New York City, on brief), for appellant in No. 73-2008.

Ronald J. Veneziano, New York City [Court-appointed counsel] (Mario & Veneziano, New York City, on brief), for appellant in No. 73-2009.

David B. Sentelle, Asst. U. S. Atty. (Keith S. Snyder, U. S. Atty., on brief), for appellee in Nos. 73-2002, 73-2003, 73-2004, 73-2005, 73-2008 and 73-2009.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

Nine defendants were indicted in a single count indictment for conspiracy to violate divers provisions of 18 U.S.C. §

922 relating to the possession, sale and transportation of firearms. Of the nine, one has never been apprehended, five pleaded guilty, and three pleaded not guilty but were convicted in a jury trial. All were sentenced to the maximum term of five years, notwithstanding that in accordance with its plea bargain the government stated that it would not oppose probation for some.

The eight sentenced defendants all appealed. In a separate proceeding, we reversed the convictions of Oren Dean Ledbetter and Henry Gene Ledbetter and granted them a new trial. In their appeals, the government confessed error because the record failed to show either that the Ledbetters were represented by counsel, or had validly waived counsel. We consider now the appeals of Looney, Scates, Searcy, Grubb, Acevedo, and Rosario. The only contention that they present having merit and warranting discussion is that the length of their sentences rests in part on highly prejudicial information, to which they had no opportunity to respond, which was received by the district judge *ex parte*. We agree. We vacate their sentences and direct that they be sentenced anew by another district judge.

### I.

Succinctly stated, the conspiracy of which Looney was convicted and to which the other defendants pleaded guilty involved the procuring of firearms from a firearm dealer in South Carolina, and the transportation of them to New York City for resale. During the period of the conspiracy which lasted about twelve months, approximately 3,576 handguns were purchased, and most of these were transported to and distributed throughout New York City.

The factual basis for defendants' contention in this appeal arose from the trial of Looney and the two Ledbetters. At the time that they were tried, none of the defendants had been sentenced. While the record does not reflect the

facts with certainty, it is agreed by those who were present that, before the trial was resumed after a luncheon recess, the district judge entered a room near the courtroom, in which a number of government witnesses, Looney's attorney, Scates and Searcy were present. The other defendants and other counsel were not present. The district judge made inquiry of a government witness about papers that he had in his possession. The contents of the papers were described, and perhaps the papers themselves exhibited to the district judge; but, in any event, the district judge gained knowledge of how certain of the guns purportedly had been seized in New York in connection with the commission of certain crimes.

Following the jury verdicts of guilty, sentence was pronounced on Looney, the two Ledbetters, Acevedo and Rosario. Following some introductory comments, the district judge stated:

> Now, some member from New York —I don't know which one of the two it was—in talking in the District Attorney's room,* said that certain people were killed by some of these 3,576 guns in New York State. *These guns were taken from people who committed murder and those were the ones that were the murder weapons. 165 of this 3,576 guns were recovered and that was for crimes committed by individuals that had one of these guns in their possession, or maybe more,* and, of course, they talked about some of them bringing $150.00. They cost $17.50 down here, I believe. They speak of them as Saturday night specials, and things of that kind, .22's and .38's, all of them dangerous (emphasis added).

The district judge's appraisal of the significance of the information which he had obtained appears from his following additional comment:

> So America better take stock of itself and this case here is evidence of how

---

* The parties and counsel who were present agree that the place was a witness room

nearby the courtroom and not any part of the office of the United States Attorney.

ordinary individuals can enter into a conspiracy, can enter into a crime which has ramifications by which, well, you can shoot everybody in Charlotte with 3,576 guns, and they wouldn't like that either—not enough mortuaries, not enough cemetaries, not enough places to put them. So it's a bad situation, gentlemen, one of the worse places you can try with no deaths resulting right in our area. Fortunately for all of the parties, the maximum punishment in the case is relatively small amount of time and from that, of course each of them if they behave properly will be eligible for parole if they're sentenced to prison after they served one-third of the time. It's a bad case and I think it deserved severe punishment within the range of humanity toward another.

Scates, Searcy and Grubb, who could not be present when the other defendants were sentenced, were the subject of a separate sentencing procedure. At their sentencing, the district judge stated:

> COURT: . . . and the officers in New York I believe it was 165 guns they have seized thus far taken from individuals who have been arrested and charged with offenses, and *I believe there were thirty-three people killed with these guns.* I have forgotten the numbers (emphasis added).
>
> MR. SENTELLE [THE PROSECUTOR]: We don't know the numbers of that. There have been some people.
>
> COURT: But 165 of these guns have been seized thus far. They check against the numbers. So just turning these Saturday nights specials loose there in New York City as a result of this, they will be killed from now on out until the guns are worned out. These gentlemen here, they worked in a terrific situation.

At both of the two sentencing proceedings, the district judge rebuffed the offer of counsel for some of the defendants to refute some of his statements or to present evidence of mitigating circumstances.

From the several statements of the district judge, it seems clear that he was greatly impressed by his understanding of the number of homicides perpetrated in New York by the use of guns which defendants had caused to be distributed in that city, and that the severity of the sentences he imposed is attributable, at least in part, to this understanding. Whether there had been homicides in New York by the use of guns supplied by defendants, and, if so, how many, were facts which were not disclosed in the evidence adduced at the trial of Looney and the two Ledbetters. They nowhere appear in the record; there is no suggestion that they should remain confidential; and their accuracy is unverified. Indeed from the response of the prosecutor at the second sentencing, it appears that some of the facts remembered by the district judge were neither established nor provable.

## II.

We think that resentencing of the defendants is required under our decision in United States v. Powell, 487 F.2d 325 (4 Cir. 1973). *Powell* involved a car theft ring operating interstate in violation of the Dyer Act. The defendant Powell was indicted with five others including his mother and two brothers, but was tried separately from his relatives. The same district judge presided over Powell's trial and that of his mother and two brothers. Powell's mother was acquitted, one brother was convicted on a single count and sentenced to eighteen months, and the other brother was convicted of three counts and sentenced to two and one-half years. Powell was convicted of a single count and was sentenced to five years. The reason for the much stiffer sentence meted out to Powell appeared in the trial court's comments *after* Powell's counsel had spoken and Powell had exercised his right of allocution. The district judge noted that he had not disclosed the probation report to defense counsel but stated that he

was basing his sentencing only on the facts brought out at trial. The judge then stated that the defendant was the "ringleader" of the group and was responsible for getting his brothers in trouble. There was no support in the record for these two findings.

Writing for a unanimous panel, Judge Butzner noted that federal sentences are generally unreviewable, *see,* Gore v. United States, 357 U.S. 386, 393, 78 S. Ct. 1280, 2 L.Ed.2d 1405 (1958), but pointed out that a sentence cannot stand "if it is based on assumptions concerning the defendant's criminal record that are 'materially false,' Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), or if it is founded 'in part upon misinformation of constitutional magnitude.' United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972)." 487 F.2d at 328. Extending the rule which requires the vacating of sentences based on false information to sentences based on assumptions not supported in the record, we held that a remand for resentencing was necessary:

> There is no dispute that the materiality of the judge's findings that Powell was the ringleader of the auto theft group and that he led his brothers astray. These were the sole reasons cited by the judge for sentencing Powell to a prison term twice as long as that imposed on one of his brothers who had been convicted under more counts of the indictment than Powell. Misinformation or an unfounded assumption concerning facts of this importance is sufficient to render the sentencing procedure invalid. 487 F.2d at 328.

In the instant cases, even if we overlook the manifest impropriety of the district judge's *ex parte* interrogation of government witnesses while the trial was in progress, the fact is that the severity of the sentences was influenced by the private information which the district judge elicited. The information lacks record support; its accuracy is not established; it does not appear to be confidential; and Acevedo and Grubb were denied the opportunity to challenge it or attempt to explain it away. We hold that under these circumstances *Powell* requires resentencing of all defendants.

### III.

Accordingly, we affirm defendants' convictions but vacate their sentences and remand the cases for resentencing. Since the error was one created by the district judge, we think that the appearance of justice, as a minimum, requires that resentencing be before another district judge.

Vacated and remanded.