544 S.E.2d 919

STATE of West Virginia, Plaintiff
Below, Appellee,

v.

William Glen HULBERT, Defendant
Below, Appellant.

No. 28394.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 23, 2001.
Decided March 12, 2001.

Darrell V. McGraw, Jr., Attorney General, Jeffrey G. Blaydes, Deputy Attorney General, for the Appellee.

Dreama D. Sinkkanen, Public Defender Corporation, Clarksburg, for the Appellant.

ALBRIGHT, Justice:

Appellant William Glen Hulbert appeals from his convictions for third offense domestic assault and wanton endangerment with a firearm. In challenging his conviction for domestic assault under West Virginia Code § 61–2–28(c) (1994) (Repl.Vol.2000), Appellant argues that a third offense conviction under this statute is only permitted when the predicate offenses were committed in this state. Because his two prior convictions were from Kalamazoo County, Michigan, Defendant contends that the third offense conviction cannot be upheld. Appellant challenges his conviction under West Virginia Code § 61–7–12 (1994) (Repl.Vol.2000) for wanton endangerment with a firearm, arguing that a required element of that offense is a discharge of the firearm. Appellant further asserts error based on the trial court's refusal to strike for cause a particular juror, whose voir dire testimony suggested an increased propensity to find Appellant guilty if she was apprised of prior domestic assault convictions. Based on our review of the record, we find no merit to Appellant's assignments of error concerning the wanton endangerment conviction and voir dire, but we do find error with regard to the domestic violence conviction. Accordingly, we affirm, in part; reverse, in part; and remand for entry of a new sentencing order consistent with the holdings of this opinion.

1. The Singletons are the aunt and uncle of Ms. Gowers.

2. Appellant had left the Singleton residence around 11:30 a.m., purportedly because of his dissatisfaction with the Singleton household rule that alcohol could not be consumed on the premises.

## I. Factual and Procedural Background

On July 24, 1999, a domestic incident involving Appellant and his female companion, Linda Gowers, began at the Singleton residence [1] where Appellant and Ms. Gowers had been residing for several weeks. After leaving the Singleton residence on the morning of July 24th,[2] Appellant returned to the Singleton's property at about 3:20 p.m. Following some initial conversation outside, Ms. Gowers followed Appellant into the pantry in the Singleton home, where the Singletons kept both knives and guns. During the two-hour period [3] when Ms. Gowers remained in the pantry, Appellant showed Ms. Gowers a 7 millimeter rifle; [4] asked Ms. Gowers to help Appellant kill himself; brandished a knife; and threatened to kill both Ms. Gowers and her children. At approximately 9:30 p.m. on this same date, Appellant was arrested and charged with domestic violence and wanton endangerment.

At trial, which occurred on October 18 and 19, 1999, the State offered two witnesses: Ms. Gowers and the arresting officer, Harrison County Sheriff's deputy Don Quinn. Appellant did not take the stand in his own defense. Based on two prior convictions for domestic violence in the State of Michigan, the State prosecuted Appellant for a third offense of domestic violence—an offense which contains a built-in sentence enhancement. See W.Va.Code § 61–2–28(c). Appellant was convicted on both counts, third offense domestic violence and wanton endangerment. Following the sentencing hearing on November 29, 1999, the trial court entered an order on December 9, 1999, sentencing Appellant to one to five years for third offense domestic battery and five years for wanton endangerment with a firearm, with the sentences to be served consecutively.

## II. Standard of Review

 With regard to the issues raised concerning the elements necessary to prove

3. The entirety of the period during which the incident occurred was approximately six hours as Appellant first arrived at the Singleton property at 3:20 p.m. and the arresting officers arrived on the scene at 9:35 p.m.

4. Appellant obtained the rifle and the knife from the Singleton's pantry.

convictions under West Virginia Code §§ 61–2–28(c) and 61–7–12, our standard of review is *de novo* because statutory interpretation is clearly involved. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). We review the issue concerning the lower court's failure to strike for cause juror Fullen under an abuse of discretion standard. *See* Syl. Pt. 2, *State v. Beacraft,* 126 W.Va. 895, 30 S.E.2d 541 (1944) (holding that "[i]n a criminal case, the inquiry made of a jury on its voir dire is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused"); *see also* Syl. Pt. 2, *Michael on Behalf of Estate of Michael v. Sabado,* 192 W.Va. 585, 453 S.E.2d 419 (1994) (recognizing that "[t]he official purposes of *voir dire* is to elicit information which will establish a basis for challenges for cause and to acquire information that will afford the parties an intelligent exercise of peremptory challenges" and that "[t]he means and methods that the trial judge uses to accomplish these purposes are within his discretion").

### III. Discussion

#### A. Domestic Violence Conviction

##### 1. Out–of–State Convictions as Predicate Offenses

Appellant seeks a reversal of his conviction for third offense domestic violence, contending that only such offenses which have resulted in convictions in this state can serve as the necessary prior convictions under the West Virginia statute. To support his position, Appellant looks to the language of West Virginia Code § 61–2–28(c), which defines an offense of domestic assault and/or battery by cross-referencing the definitions for the criminal offenses of assault and battery, as stated in West Virginia Code § 61–2–9 (1978) (Repl. Vol.2000). Since the statute expressly refers to the West Virginia definitions of assault and/or battery, Appellant reasons that only offenses committed in West Virginia can serve as predicate offenses within the statutory contemplation of West Virginia Code § 61–2–28(c). In addition, Appellant asserts that if the Legislature had intended that out-of-state domestic violence convictions could serve as the predicate offenses for a third offense conviction, West Virginia Code § 61–2–28(c) would have been written in terms similar to West Virginia Code § 17C–5–2(*l*)(3) (1996) (Repl.Vol.2000), which expressly provides for the use of out-of-state convictions as the predicate offenses for third offense DUI convictions.

In response to Appellant's contentions, the State argues that the language of West Virginia Code § 61–2–28(c) suggests legislative approval for using out-of-state convictions as predicate offenses. Citing the inclusion of the terms "as defined" in reference to the offenses of domestic assault and battery, the State suggests that this statutory language indicates an inclusive, rather than an exclusive, approach to the use of out-of-state convictions. According to the State, the key to whether an out-of-state offense can qualify as a predicate offense is determined by whether the foreign conviction was for an offense that substantially parallels the elements of offenses under West Virginia Code § 61–2–28. Furthermore, the State notes that nothing in the statutory scheme suggests that our Legislature intended that the enhanced penalties set forth in West Virginia Code § 61–2–28(c) would apply only when the predicate domestic violence offenses occurred within this state's boundaries.[5] The State suggests that the exact opposite is true and cites to the enactment of the Domestic Violence Act, West Virginia Code §§ 48–2A–1 to –14 (1998) (Repl.Vol. 1999), and its clear adoption of legislative policy aimed at both preventing and punishing domestic violence.[6] *See* W.Va.Code

---

**5.** On this subject, the trial court opined during the pre-trial conference:

[I]t seems to me that the plain language of the statute is that it doesn't limit it to only offenses [committed] in West Virginia. Otherwise I think our legislature would [be] say[ing] you can beat the hell out of your wife in other states and come here and get a clean slate and I doubt that is what the legislature intended.

**6.** The State also argues that even the rule of lenity, which applies where a criminal statute contains ambiguous language and requires that penal statutes be strictly construed against the

§ 48–2A–1. The State contends that the objectives of the Domestic Violence Act should be examined as an aid to our determination of whether out-of-state convictions can be used to enhance punishment for a domestic violence offense under West Virginia Code § 61–2–28.[7]

In stating the purpose of the Domestic Violence Act, the Legislature has declared the following:

(1) No one should be a victim of domestic or family violence. All people have a right to be safe in their homes and in their families;

(2) Children are often physically assaulted or witness violence against one of their parents or other family or household members, violence which too often ultimately results in death. These children may suffer deep and lasting emotional harm from victimization and from exposure to domestic or family violence;

(3) Domestic or family violence is a major health and law-enforcement problem in this state with enormous costs to the state in both dollars and human lives. It affects people of all racial and ethnic backgrounds and all socioeconomic classes; and

(4) Domestic or family violence can be deterred, prevented or reduced by legal intervention that treats this problem with the seriousness that it deserves.

W.Va.Code § 48–2A–1(a).

The State convincingly posits that nothing in the objectives articulated in West Virginia Code § 48–2A–1, or in the language of West Virginia Code § 61–2–28, evinces a legislative concern to limit the scope of this state's policy against domestic violence to those offenses that occur in this state. Given the legislative decision to treat repeat domestic offenders more severely, combined with the legislative recognition of the seriousness of domestic violence, we agree with the State's contention that permitting out-of-state domestic violence offenses to serve as predicate offenses for enhancement purposes is consistent with the Legislature's articulated policy of preventing and deterring domestic violence. *See* West Virginia Code § 48–2A–1.[8] Upon a careful examination of the Domestic Violence Act in conjunction with West Virginia Code § 61–2–28, we are convinced that the Legislature intended to punish second or third instances of domestic violence more severely, regardless of where the earlier conduct occurred. To do otherwise, would invite

State and in favor of the defendant, does not foreclose a court from looking at the underlying objective of the statutes at issue. *See* Syl. Pt. 5, *State ex rel. Morgan v. Trent,* 195 W.Va. 257, 465 S.E.2d 257 (1995). The State suggests that the legislative concern for eradicating domestic violence is clear, and cites to the authorization of warrantless arrests or probable cause arrests of domestic violence perpetrators through the 1994 amendments to the Domestic Violence Act simultaneous to its enactment of West Virginia Code § 61–2–28, as further evidence of legislative intent. *See* W.Va.Code § 48–2A–14.

7. Under well-established rules of statutory construction, we read "[s]tatutes which relate to the same subject matter … and appl[y] [them] together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, in part, *Smith v. Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). There can be no question that the Domestic Violence Act and West Virginia Code § 61–2–28 relate to the same subject matter—domestic violence—and thus, can properly be examined in *pari materia.*

8. The Domestic Violence Act further provides that:

(b) This article shall be liberally construed and applied to promote the following purposes:
(1) To assure victims of domestic or family violence the maximum protection from abuse that the law can provide;
(2) To create a speedy remedy to discourage violence against family or household members with whom the perpetrator of domestic or family violence has continuing contact;
(3) To expand the ability of law-enforcement officers to assist victims, to enforce the domestic or family violence law more effectively, and to prevent further abuse;
(4) To facilitate equal enforcement of criminal law by deterring and punishing violence against family and household members as diligently as violence committed against strangers;
(5) To recognize that domestic or family violence constitutes serious criminal behavior with potentially tragic results and that it will no longer be excused or tolerated; and
(6) To recognize that the existence of a former or on-going familial or other relationship should not serve to excuse, explain or mitigate acts of domestic or family violence which are otherwise punishable as crimes under the laws of this state.
W.Va.Code § 48–2A–1(b).

repeat domestic offenders to move to this state to take advantage of the proverbial "clean slate," thereby enabling them to continue committing acts of domestic violence in this state similar to acts they previously committed elsewhere without realizing the legislatively-intended effects of enhanced punishment for repeat offenders. Accordingly, we hold that prior domestic violence convictions in other states may be used to enhance the penalty for subsequent domestic violence convictions under West Virginia Code § 61–2–28.

### 2. Which Out–of–State Convictions May Be Used

While the State suggests that any out-of-state conviction that has elements *similar* to those required for an offense under West Virginia Code § 61–2–28 may be used for enhancement purposes, we believe that prosecution under this statute requires something more than just *similarity* of the elements. Our law should and does require, either that the elements of the foreign offense be *the same* as those required for a conviction under West Virginia law, or, alternatively, that the conduct resulting in the conviction in the foreign state be sufficient to support a conviction in this state. We reach this conclusion by looking at what the Legislature and this Court have said in the matter of enhanced penalties for another societal ill— driving a motor vehicle under the influence of drugs or alcohol. In directing that convictions for drunk driving in other states be used to enhance penalties for subsequent convictions for drunk driving in this state, the Legislature has required that the prior out-of-state convictions have "the same elements" as West Virginia's criminal statutes on that subject. W. Va.Code § 17C–5–2(*l*)(3). Where the other state's drunk driving statutes have what this Court has called "additional elements"—elements not found in West Virginia's enactments—this Court has permitted the out-of-state conviction to be used to enhance the penalty for a subsequent

conviction in this state, if "the factual predicate upon which the conviction was obtained would have supported a conviction under the West Virginia DUI statute." Syl. Pt. 2, in part, *State ex rel. Conley v. Hill*, 199 W.Va. 686, 487 S.E.2d 344 (1997).[9]

■ In the case before us, some of the elements of the Michigan law are similar to, but not identical to, the elements required by West Virginia Code § 61–2–28. Other elements found in the Michigan statute are completely lacking in our statute. Following the approach adopted by this Court in *Conley*, we believe that the critical factor necessary for use of an out-of-state domestic violence conviction when the foreign state's statutory elements are not identical to ours—as is the case here—is a demonstration of the factual predicates necessary for a conviction under West Virginia law, which requires a showing of all of the elements necessary for an offense committed in this state. Accordingly, we hold that an out-of-state conviction may be used as a predicate offense for penalty enhancement purposes under subsection (c) of West Virginia Code § 61–2–28 provided that the statute under which the defendant was convicted has the same elements as those required for an offense under West Virginia Code § 61–2–28. When the foreign statute contains different or additional elements, it must be further shown that the factual predicate upon which the prior conviction was obtained would have supported a conviction under West Virginia Code § 61–2–28(a) or (b) in order to invoke the enhanced penalty contained in subsection (c).

### 3. Proof of Out–Of–State Convictions

Appellant argues that the State failed to meet its burden of proving his two Michigan domestic violence convictions. He maintains that the State never presented any evidence to demonstrate that the Michigan statute

9. A close examination of the Ohio statute under scrutiny in *State ex rel. Conley v. Hill* indicates that the element of the Ohio statute at issue in that case was not an additional one; instead, it was a somewhat different, broader element. Under Ohio law, a conviction might be had for "operating" a motor vehicle while intoxicated whereas West Virginia law premised a conviction

on "driving" a motor vehicle while intoxicated. Our Court referred to that difference as an "additional" element and required that the factual predicate of the Ohio conviction for "operating" be shown to be such as would support a conviction for "driving" the motor vehicle. 199 W.Va. at 690, 487 S.E.2d at 348.

under which Appellant was convicted had the same elements necessary to prove domestic assault under West Virginia Code § 61–2–28. In addition, Appellant argues that the State failed to present any of the facts upon which the Michigan convictions were based sufficient to permit the Court to make a determination of whether the Michigan offenses would similarly constitute offenses under West Virginia Code § 61–2–28.

In response to Appellant's arguments regarding the State's failure to adequately prove both the existence of the Michigan convictions and the similarity of the offenses, the State relies solely on the "Certificates of Conviction" obtained from Michigan as evidence of Appellant's previous convictions for "domestic violence." On the question of the identity or similarity of the elements of the Michigan offenses, the State cites the fact that the trial court took judicial notice of the Michigan statutes and further suggests that the burden of proof—at least the burden of going forward with the evidence—shifted to Appellant with respect to any alleged lack of congruence between the two statutes or failure of the factual predicates underlying the Michigan convictions to support a conviction under West Virginia law.

In addressing the issue of whether the Michigan and West Virginia statutes share congruent elements, it appears that the trial court did take judicial notice of a Michigan statute defining domestic violence in that state—Mich. Comp. Laws Ann. § 750.81(2), (3) (West 1994)—although the record does not make entirely clear how or when the Michigan statutes were put in evidence. Nothing in the record, however, suggests that the trial court proceeded to compare the elements required in proof of the Michigan and West Virginia domestic violence offenses.

■ In our most recent case addressing the use of an out-of-state conviction for sentence enhancement purposes, this Court held in syllabus point three of *State v. Williams,* 200 W.Va. 466, 490 S.E.2d 285 (1997), that "[w]hether the out-of-state conviction satisfies the requirements of this State's enhancement statute is a question of law." Since the trial court failed to compare the statutes and make a threshold ruling on this issue, we proceed to compare the two statutes. West Virginia Code § 61–2–28 provides as follows:

(a) *Domestic battery.*—If any family or household member unlawfully and intentionally makes physical contact of an insulting or provoking nature with another family or household member or unlawfully and intentionally causes physical harm to another family or household member, he or she is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in jail for not more than twelve months, or fined not more than five hundred dollars, or both fined and confined.

(b) *Domestic assault.*—If any family or household member unlawfully attempts to commit a violent injury of another family or household member or unlawfully commits an act which places another family or household member in reasonable apprehension of immediately receiving a violent injury, he or she is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in jail for not more than six months, or fined not more than one hundred dollars, or both fined and confined.

(c) *Third offense.*—A family or household member who has been convicted of a third or subsequent domestic battery and/or domestic assault as defined in this section, assault and/or battery as defined in section nine of this article when committed against a family or household member, or any combination of such offenses, is guilty of a felony if such offense occurs within ten years of a prior conviction of any of these offenses, and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than five years and fined not exceeding five hundred dollars.

W. Va.Code § 61–2–28.

In comparison, the Michigan statute, which is entitled "Assault and assault and battery; domestic assault," reads as follows, in pertinent part:

Except as provided in subsection (3) or (4), an individual who assaults and batters his or her spouse or former spouse, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household ... is guilty of a misdemeanor punishable by imprisonment

224

for not more than 93 days or a fine of not more than $500.00, or both.

Mich.Comp.Laws Ann. § 750.81(2).

An individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, in violation of subsection (2), and who has previously been convicted of assaulting or assaulting and battering his or her spouse or former spouse, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, in violation of this section ... or a local ordinance substantially corresponding to this section or in violation of section 81a, 82, 83, 84, or 86 may be punished by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both.

Mich.Comp.Laws Ann. § 750.81(3).

A cursory examination of the two statutes discloses at least two variances between West Virginia Code § 61–2–28 and the Michigan statutes. The first variance we observe arises from the fact that an offense under West Virginia Code § 61–2–28(a) and (b) may be shown by the proof of the elements necessary to establish the crimes of "battery" and "assault," [10] combined with proof of the additional element, in each case, that the victim was a "family or household member." In contrast, the Michigan statute, as we read it, permits the conviction of one who *"batters"* or assaults *another person.* While Michigan law uses the term "batters," rather than the term "battery," our review of Michigan statutory and case law convinces us that the same elements necessary for a battery conviction in this state would result in a conviction for the offense of "battering" under Michigan law. In addition to the fact that the statute uses the term "battery" in its title, battery is defined under Michigan law as " 'the willful touching of the person of another by the aggressor or by some substance put in motion by him; or, as it is sometimes expressed, a battery is the consummation of the assault.' " *People v.*

*Bryant,* 80 Mich.App. 428, 264 N.W.2d 13, 16 (1978) (quoting *Tinkler v. Richter,* 295 Mich. 396, 295 N.W. 201, 203 (1940)). Based on this definition, we conclude that evidence supporting a conviction of "battering" under section 750.81 of the Michigan Compiled Laws would similarly support a conviction of "battery" under West Virginia law. *See* W.Va.Code 61–2–9(c) (defining battery as "unlawfully and intentionally mak[ing] physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally caus[ing] physical harm to another person").

The second variance we note is that the Michigan statute applies to one who "batters" or assaults a "spouse or former spouse, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household." [11] Mich. Comp.Laws Ann. § 750.81(3). West Virginia's statute applies to assault and battery of a "family or household member." W.Va. Code § 61–2–28. The West Virginia statute does not apply to a former spouse or individual with whom the accused has had a child in common unless such person is a "household member." *Id.* Also, a conviction obtained in Michigan against a "former resident of his or her household," who was not also a "family member," would not rest on a sufficient factual predicate to support a domestic violence conviction under West Virginia law. *Cf.* W.Va.Code § 61–2–28 to Mich.Comp.Laws Ann. § 750.81(2), (3). Given these statutory variances, the factual predicates upon which the convictions in Michigan rested must be shown in order to bring the Michigan convictions within the ambit of the West Virginia statute for enhanced punishment of subsequent domestic violence offenses.

We next address the State's alleged failure to produce sufficient evidence of the prior Michigan convictions. In proof of Appellant's two prior convictions for domestic violence, the State introduced at trial as State's Exhibit 2, two "Certificates of Conviction," authenticated by the stamped certifica-

---

**10.** *See* W.Va.Code § 61–2–9 (1978) (Repl.Vol. 2000).

**11.** Effective July 1, 2000, the terminology in the Michigan domestic violence statute that read "his or her household" was amended to read "the same household."

tion of the Clerk of the District Court of Kalamazoo County, Michigan. The "Certificates of Conviction" indicate the dates of two separate domestic violence offenses and that Appellant entered guilty pleas to the charges of first and second offense domestic violence. The certificates also recite the sentence Appellant received for each conviction. Noticeably absent from each certificate, however, is any reference to the Michigan statute under which Appellant was charged and to which he entered each plea of guilt. Moreover, the record does not contain a warrant, indictment or other charging document or other evidence from which it might be shown that the conduct for which the Appellant was convicted in Michigan would support a conviction under West Virginia law.[12]

In *State v. Cline*, 125 W.Va. 63, 22 S.E.2d 871 (1942), this Court considered what type of proof was necessary to establish a prior conviction for purposes of a subsequent violation of a statute prohibiting the carrying of a revolver without a license.[13] In *Cline*, we held that the former conviction could be established by "produc[ing] the indictment and the order showing the conviction and sentence." *Id.* at 66, 22 S.E.2d at 872–73.[14]

The Supreme Court of Washington, in *State v. Ford*, 137 Wash.2d 472, 973 P.2d 452 (1999), adopted a more relaxed standard for proving an out-of-state conviction. Under the Washington Sentencing Reform Act of 1981, a range of acceptable sentences is calculated before sentencing that depends upon both an "offender score" and the "seriousness level" of the offense. When out-of-state convictions are involved, those offenses have to be classified " 'according to the comparable offense definitions and sentences provided by Washington law.' " *Id.* at 455 (quoting Wash.Rev.Code § 9.94A.360(3)). In discuss-ing the proof necessary to admit a foreign conviction, the court in *Ford* stated:

> The best evidence of a prior conviction is a certified copy of the judgment. However, the State may introduce other comparable documents of record or transcripts of prior proceedings to establish criminal history. (court may look at foreign indictment and information to determine whether underlying conduct satisfies elements of Washington offense).

973 P.2d at 456 (citations omitted).

Under either the standard adopted in *Cline* or the more relaxed standard adopted by the state of Washington in *Ford*, we believe that the record and evidence adduced in the trial below was insufficient to establish the out-of-state convictions, given the variances between the statutes of Michigan and West Virginia and the resulting need to prove that the factual predicate underlying the Michigan convictions would similarly support a conviction under West Virginia law. As discussed above, neither the "Certificates of Conviction" any other evidence in the case identifies the Michigan statutes under which Appellant was purportedly charged and convicted. The required method of proof identified in *Cline*—that the indictment or judgment order be adduced—was not followed. Likewise, the substitutes for those documents suggested in *Ford*— "comparable documents of record or transcripts of prior proceedings to establish criminal history"—similarly were not introduced into evidence. Finally, we find insufficient evidence in the record to demonstrate the factual predicates upon which the two Michigan convictions were based. The record is utterly silent as to the first conviction and the testimony of Ms. Gowers as to the

---

**12.** While the State attempted to establish the factual predicate of the second Michigan offense through the testimony of the Appellant's victim—Ms. Gowers—as discussed, *infra*, the testimony of Ms. Gowers as to the facts underlying this conviction was very limited in scope. *See infra* note 16.

**13.** The offense involved in *Cline* was defined in West Virginia Code § 61–7–1 (1931).

**14.** In *Cline*, we evidenced concern about "overemphasizing a prior conviction" in light of the potential for prejudicing the jury on the issue of the defendant's guilt concerning a second or subsequent offense. 125 W.Va. at 66, 22 S.E.2d at 873. We opined that further proof of the prior conviction was both unnecessary and potentially prejudicial, preferring to "eliminate all elements of proof which go beyond the establishment of the identity of the accused and the fact of the conviction." *Id.* That potential for prejudice is obviated when a trial court grants a defendant's request for a bifurcated trial, as is now permitted by this Court's ruling in *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999).

factual predicates for the second conviction is of problematic value.

■ As discussed above, determining whether another state's domestic violence crimes have the same elements as offenses under West Virginia law is a matter of law for decision by the trial court. *See Williams,* 200 W.Va. at 467, 490 S.E.2d at 286, syl. pt. 3, in part. It is incumbent upon the State to introduce the relevant statutes of the foreign states to enable the trial court to take judicial notice of those statutes. If the elements are identical, the trial court's determination is rendered quite simple. In such a straightforward case, where the foreign statute and ours have identical elements, proof of the foreign statute, proof of the identity of the defendant as being the person convicted in the foreign state, and proof of his conviction of an identical offense are all that is required to utilize the out-of-state conviction to enhance punishment. When, however, there are variances between the statutes, the initial question presented is whether the foreign statute contains at least all of the elements of the West Virginia statute. In this instance, the trial court's ruling is again easily made, even if the foreign statute has additional elements in contrast to our laws. The decision which the trial court must make becomes more difficult where the statutes under comparison use different terms to refer to an element or, where, as in *Conley,* the foreign statute contains either additional or broader elements, which may or may not fit the West Virginia statutory scheme, and consequently requires proof of the underlying factual predicate relied upon to obtain the prior out-of-state conviction.

The State asserts that where the elements of criminal offenses under comparison differ, the burden shifts to the defendant to show either that the variances in the out-of-state offenses, or the evidence introduced in support of the out-of-state conviction, would not support a conviction under West Virginia law. Once it introduced the "Certificates of Conviction," the State argues that it was then incumbent on Appellant to introduce evidence that the Michigan offenses were dissimilar, either factually or legally. *See Conley,* 199 W.Va. at 690, 487 S.E.2d at 348 (holding that the burden is placed on defendant in DUI cases to raise statutory vari-

ances in defense to sentence enhancement); *see also Williams,* 200 W.Va. at 470, 490 S.E.2d at 289.

We decline to accept the State's invitation to extend the approach used in *Conley* and *Williams* to the case under consideration. In rejecting the State's theory that a defendant bears the burden of proving or disproving the fact of an out-of-state conviction, we adopt the reasoning employed by the Washington Supreme Court in *Ford:*

> The ... State's burden under the SRA [Sentencing Reform Act] ... is not overly difficult to meet. The State must introduce evidence of some kind to support the alleged criminal history... The SRA expressly places this burden on the State because it is "inconsistent with the principles underlying our system of justice to sentence a person on the basis of crimes that the State either could not or chose not to prove."

973 P.2d at 456 (quoting *In re Williams,* 111 Wash.2d 353, 759 P.2d 436 (1988) (citation omitted)). Expressly renouncing the position asserted here by the State, the Court in *Ford* stated further: "[I]t is the State, not the defendant, who bears the ultimate burden of ensuring the record supports the existence and classification of out-of-state convictions." *Id.* Underpinning the Court's analysis in *Ford* was its recognition that "fundamental principles of due process prohibit a criminal defendant from being sentenced on the basis of information which is false, lacks a minimum indicia of reliability, or is unsupported in the record." *Id.* (citing, *inter alia, Torres v. United States,* 140 F.3d 392, 404 (2nd Cir.), *cert. denied,* 525 U.S. 1042, 119 S.Ct. 595, 142 L.Ed.2d 537 (1998); *United States v. Looney,* 501 F.2d 1039, 1042 (4th Cir.1974)).

■ In *State v. Nichols,* 208 W.Va. 432, 541 S.E.2d 310 (1999), this Court made clear that prior convictions constitute a separate "status element" of the offense with which we are dealing. In short, proving the prior convictions is a part of the guilt/innocence stage of a trial. At the guilt/innocence stage of a trial, the due process principles which attach are both substantial and important. *See State v. Reedy,* 177 W.Va. 406, 417, 352

S.E.2d 158, 169 (1986) (stating that "[s]ubstantial due process protection is afforded in a recidivist proceeding"). Under longstanding rules of criminal law, the burden of alleging and proving each element of a criminal offense beyond a reasonable doubt rests with the state and may not be shifted to the defendant. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Bowman v. Leverette*, 169 W.Va. 589, 610, 289 S.E.2d 435, 447 (1982) (stating that " '[d]ue process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the fact-finder of his guilt' ") (quoting *In re Winship*, 397 U.S. at 364), 90 S.Ct. 1068; *State v. Goff*, 166 W.Va. 47, 55, 272 S.E.2d 457, 463 n. 9 (1980) (stating that burden of proof "never shifts to a defendant" in announcing approved burden of proof instruction patterned after federal instruction).

◼ Accordingly, we hold that in proving the fact of an out-of-state conviction for punishment enhancement purposes under West Virginia Code § 61–2–28(c), the State may introduce a properly authenticated copy of the judgment of conviction that clearly indicates a defendant's identity and the fact of conviction. The conviction order may also include pertinent information regarding the offense and the foreign law under which the conviction was obtained. Additional means of proof include a properly authenticated copy of the warrant, indictment or other charging document, other comparable documents of record, or transcripts which establish the relevant facts pertinent to the offense and the conviction.

◼ A trial court that is considering whether an out-of-state conviction can be used for sentence enhancement purposes should have before it the foreign statute under which the prior conviction was obtained to ascertain whether the foreign law contains the same elements as the West Vir-

ginia statute at issue, or, if the foreign statute differs from ours, to determine whether, despite any variances, the foreign conviction may still be the basis for punishment enhancement in West Virginia. Once the trial court determines, as a matter of law, that it is necessary to prove the factual predicate under which the foreign judgment was obtained in order to demonstrate that such predicate is sufficient to support a conviction under West Virginia law, the State retains the burden of proving that conduct.[15] The first question then presented is: Would the factual predicate upon which the foreign conviction was obtained support a conviction under West Virginia law? Again, that is a question of law to be answered by the Court. Finally, the question then presented as to the prior conviction is: Did the State prove to the jury, beyond a reasonable doubt, the fact of the out-of-state conviction and the fact that the foreign conviction was obtained on the factual predicate necessary to the use of the foreign conviction in this state for the enhancement of punishment for a subsequent offense? Insofar as *Conley and Williams* might be read to shift the burden of going forward with the evidence or the burden of persuasion to the Defendant with respect to a prior conviction "status element" of an offense in this state, they are overruled. *See Conley*, 199 W.Va. 686, 487 S.E.2d 344 (1997); *Williams*, 200 W.Va. 466, 490 S.E.2d 285 (1997).

In the case before us, the record demonstrates that the State failed to prove that the elements of the Michigan offenses for which Appellant was apparently convicted were identical to West Virginia's domestic violence offenses; failed to prove upon what factual predicates the Michigan convictions were obtained; and, therefore, also failed to demonstrate that the factual predicates upon which the Michigan convictions were obtained

---

**15.** The inquiry into the factual predicate for an out-of-state conviction does not justify inquiry into the guilt or innocence of the defendant in the foreign court. As in recidivism matters, the issue of guilt on the prior charge has previously been adjudicated and is not in issue in the subsequent trial in this state. Aside from some constitutional issues that might be raised regarding the prior proceedings (on which the defendant has the burden of persuasion), the inquiry is limited to proving: (1) that the defendant in the prior proceeding is the same as the person before the court; (2) the fact of conviction of the prior offense; and (3) if there are similar and other elements which differ in breadth or number from the West Virginia definition of the offense, that the factual predicate upon which the foreign conviction was obtained would support a conviction of the offense as defined by West Virginia law.

would prove each of the elements of the offense as defined in West Virginia and thus support a conviction under West Virginia Code § 61–2–28.[16] While the evidence presented is insufficient to support a conviction for third offense domestic violence due to the problems discussed with regard to the out-of-state conviction, there was sufficient evidence to convict Appellant of a first offense domestic violence under West Virginia Code § 61–2–28. Accordingly, we reverse Appellant's conviction for third offense domestic violence and remand for entry of a new sentencing order in connection with a conviction of first offense domestic violence.

### B. Wanton Endangerment with a Firearm Conviction

Appellant suggests that his conviction for wanton endangerment with a firearm cannot be upheld because there was no proof that the firearm involved was ever discharged. Rather than citing to any language within the statute under which he was charged and convicted, West Virginia Code · § 61–7–12, Appellant relies exclusively on the fact that cases decided under this statute have included, as part of their facts, the discharge of a weapon. *See, e.g., State v. Wright,* 200 W.Va. 549, 490 S.E.2d 636 (1997). We are unpersuaded by this logic and more importantly, the language of the statute is what controls our decision. The statute at issue provides that:

> Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years, or, in the discretion of the court, confined in the county jail for not more than one year, or fined not less than two hundred fifty dollars nor more than two thousand five hundred dollars, or both.

W.Va.Code § 61–7–12.

■ Because the offense of wanton endangerment with a firearm is defined, not in terms of whether the firearm is discharged, but merely with reference to the commission of "any act," the discharge of a firearm is not an element of West Virginia Code § 61–7–12. Our interpretation of this statute is in accord with that of other states that have addressed this issue. *See State v. Moore,* 2000 WL 1612705 (Tenn.Crim.App.2000) (holding that firing of weapon was not an element of offense of reckless endangerment with a deadly weapon under Tenn. Rev.Code § 39–13–103(a)–(b)); *see also Bracksieck v. State,* 691 N.E.2d 1273, 1275 (Ind.App.1998) (stating that the court "can envision no situation in which pointing a loaded firearm at another person does not also create a substantial risk of. bodily injury to that person"); *Key v. Commonwealth,* 840 S.W.2d 827, 829 (Ky.Ct. App.1992) (recognizing that pointing of gun, whether loaded or unloaded, constitutes conduct that creates substantial danger of death or serious injury); *State v. Meier,* 422 N.W.2d 381 (N.D.1988) (upholding conviction for reckless endangerment where defendant pointed unloaded rifle at two police officers); *In re ALJ v. State,* 836 P.2d 307 (Wyo.1992) (holding that pointing of unloaded gun at another creates violent situation supporting conviction of reckless endangerment provided firearm not pointed for defensive purposes). Accordingly, we find no basis for error with Appellant's conviction on the charge of wanton endangerment with a firearm.

### C. Voir Dire Error

■ Appellant asserts error based on the trial court's failure to strike for cause juror Jodi Fullen. While Appellant did remove Ms. Fullen from the panel through the use of one of his peremptory strikes, he nonetheless asserts error based on juror Fullen's statement during voir dire that she might be more likely to convict Appellant if she knew he had prior convictions for domestic violence offenses. Our review of the record demonstrates that the trial court continued to question juror Fullen until it was convinced that

---

**16.** In the case before us, the State offered no evidence regarding the factual predicate for the first Michigan conviction and elicited some limited testimony from Ms. Gowers regarding the second Michigan conviction. That testimony barely touched on the factual predicate for the earlier conviction; to the extent that the testimony addressed the factual predicate, it invited a retrial of the Michigan case and did not *prove* the basis on which Michigan obtained the conviction.

she could set aside any preconceived bias toward conviction and fairly assess the evidence presented against Appellant on the current charges.[17]

This Court made clear in *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996) that

> [t]he trial court has broad discretion in determining whether to strike jurors for cause, and we will reverse only where actual prejudice is demonstrated.... The relevant test for determining whether a juror is biased is "whether the juror [ ] ... had such fixed opinion that [he or she] could not judge impartially the guilt of the defendant."

*Id.* at 605, 476 S.E.2d at 552 (citing *Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (citations omitted)). We find no abuse of discretion with the trial court's decision to permit Ms. Fullen to remain on the panel.

Based on the foregoing, we affirm Appellant's conviction on the charge of wanton endangerment with a firearm; reverse Appellant's conviction on the charge of third offense domestic violence; and remand for entry of a new sentencing order on the domestic violence conviction consistent with the holdings of this opinion.

Affirmed, in part; Reversed, in part; and Remanded with Directions.

Justice MAYNARD dissents.

---

17. The actual colloquy went as follows:
> THE COURT: Just because he has been supposedly convicted before, you don't think that makes him guilty this time, do you?
> THE JUROR: No, that might tend to sway me though, because.
> THE COURT: ... [I]f the court instructs you that you cannot consider those other offenses on the guilt or innocence of this charge, can you apply the law to the facts as far as this one. Can you comply with that instruction of the court if I tell you not to consider those others on whether or not he did this one. Can you separate those two in your mind?
> THE JUROR: I believe I can do that.