UNITED STATES of America,
Plaintiff–Appellee,

v.

Jordan LAUDERMILT, Defendant–
Appellant.

No. 13–4487.

United States Court of Appeals,
Fourth Circuit.

Argued: March 18, 2014.

Decided: June 19, 2014.

**ARGUED:** Stephen Douglas Herndon, Wheeling, West Virginia, for Appellant. Randolph John Bernard, Office of the United States Attorney, Wheeling, West Virginia, for Appellee. **ON BRIEF:** William J. Ihlenfeld, II, United States Attorney, Office of the United States Attorney, Wheeling, West Virginia, for Appellee.

Before KEENAN and FLOYD, Circuit Judges, and Max O. COGBURN, JR., United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by unpublished opinion. Judge COGBURN wrote the opinion, in which Judges KEENAN and FLOYD joined.

Unpublished opinions are not binding precedent in this circuit.

COGBURN, District Judge:

A jury convicted Jordan Laudermilt of violating 18 U.S.C. § 922(g)(1), which prohibits possession of a firearm by a convicted felon. He was sentenced to 120 months' imprisonment. Laudermilt challenges his conviction, arguing that the district court committed plain error when it admitted a 911 recording and allowed unnecessarily cumulative testimony from responding officers concerning that recording. He also contends that the district court erred at sentencing in allowing a four-level enhancement for use of a firearm by a prohibited person during the course of the commission of another felony, and in calculating his criminal history by including a criminal history point for convictions that resulted from uncounselled pleas.[1] For the reasons that follow, we affirm.

## I.

On appeal from a criminal conviction, we recite the relevant facts in the light most favorable to the government. *United*

---

1. Although it is not altogether clear from Laudermilt's opening brief that he raised the issue of whether the 911 calls should have been admitted, from our review of the government's brief, it appears that the government thinks that he did. Therefore, for purposes of this opinion, we assume that he raised the issue.

*States v. Smith,* 701 F.3d 1002, 1004 (4th Cir.2012).

## A.

On February 27, 2011, six law enforcement officers responded to a 911 call from Laudermilt's residence in Ohio County, West Virginia. The caller reported a domestic disturbance involving Laudermilt and a firearm. When the officers arrived at the scene, three witnesses reported to the officers that Laudermilt was in the home with a firearm. The officers observed Laudermilt come from inside the home to a porch, where he verbally threatened his girlfriend, Shannalee Kuri (Kuri), and the other two witnesses, Kuri's brother and father. After determining that he was not then in possession of a firearm, the officers ordered the defendant to the ground, handcuffed him, and conducted a protective sweep of the home, where they located a rifle on a rack in a pantry near the kitchen. At trial, Kuri testified that Laudermilt threatened to shoot her with a gun, and Kuri's father and brother testified that Laudermilt told them that a coroner and "body bags" would be needed.

## B.

After Laudermilt was arrested, he was charged by a grand jury with unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1); 924(a)(2). After the government successfully appealed an adverse suppression order to this court, *see United States v. Laudermilt,* 677 F.3d 605 (4th Cir.), *cert. denied, Laudermilt v. United States,* —— U.S. ——, 133 S.Ct. 458, 184 L.Ed.2d 281 (2012), a jury found the defendant guilty of the offense charged on February 6, 2013.

After the verdict, a presentence investigation report (PSR) was prepared, which concluded that Laudermilt was subject to a total offense level of 28, a criminal history

category of VI, and a resulting advisory guidelines sentencing range of 140 to 175 months' imprisonment. Because the statutory maximum penalty under § 922(g)(1) was 10 years, 120 months became the advisory guidelines sentencing range. The district court concluded that the proposed guidelines sentencing range was appropriate, denied Laudermilt's motion for a downward variance, and sentenced him to 120 months' imprisonment.

## II.

■ Appellant presents essentially two issues on appeal: (1) whether the district court committed plain error at trial in admitting the 911 recording and by allowing the responding officers to testify concerning the 911 call; and (2) whether the district court erred at sentencing when it imposed a four-level enhancement for use of a firearm by a prohibited person during the course of the commission of another felony and when it calculated his criminal history by including convictions that resulted from uncounselled pleas.

As Laudermilt failed to object at trial to these evidentiary issues, we apply plain error analysis. *United States v. Thomas,* 669 F.3d 421, 424 (4th Cir.2012). To establish plain error, appellant must show that: (1) there was error; (2) the error was plain; and (3) the error affected substantial rights. *Id.* Even if appellant can satisfy these elements, error will not be found unless the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citation and internal quotation marks omitted).

As to his assignments of error at sentencing, Laudermilt raised those objections with the trial court. We review a district court's factual findings for clear

error and questions of law de novo. *See United States v. Abu Ali*, 528 F.3d 210, 261 (4th Cir.2008). The determination whether a firearm was possessed in connection with another felony offense under U.S.S.G. § 2K2.1(B)(6) is a factual determination, to which we apply the clearly erroneous standard. *See United States v. Jenkins*, 566 F.3d 160, 163 (4th Cir.2009); *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989). Determining whether convictions were properly included in a defendant's criminal history score is a question of law, which we consider de novo. *See United States v. Allen*, 446 F.3d 522, 527 (4th Cir.2006).

### A.

■ Laudermilt challenges the trial court's admission of the 911 recording and the officers' testimony concerning the recording, contending that such evidence constituted inadmissible hearsay under the Sixth Amendment's Confrontation Clause and was unfairly prejudicial under Federal Rule of Evidence 403.

Taking the evidence presented at trial in a light most favorable to the government, *see Smith*, 701 F.3d at 1004, the evidence shows that the 911 caller was Laudermilt's girlfriend, Kuri, and that Kuri reported that Laudermilt was in possession of a firearm and had threatened her with a firearm. Without objection, police officers testified that they went to Laudermilt's residence in response to the 911 call.

Statements which are offered to explain why police officers were present at a particular place are not hearsay. *See United States v. Love*, 767 F.2d 1052, 1063 (4th Cir.1985) (stating that "an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken" (citations omitted)). Here, close review of the trial transcript reveals that neither the 911 recording nor the testimony of the officers was offered for the truth of its content, but was instead offered simply to explain why six police officers responded to a domestic disturbance call.

■ The admission of the 911 call and the police officers' statements regarding the 911 call also does not violate the Confrontation Clause of the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that under the Confrontation Clause, the government is prohibited from introducing "testimonial" hearsay unless the witness who made the out-of-court statement was unavailable and previously had been subjected to cross-examination. *Id.* 541 U.S. at 68, 124 S.Ct. 1354. The Court later held that 911 tapes were patently non-testimonial when made "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

Nothing in the record before this court even remotely suggests that the primary purpose of the 911 call was anything other than the caller attempting to secure emergency services from the police. Under *Davis*, the contents of the 911 call were clearly non-testimonial, as were the statements of the dispatcher to which the police officers responded. Accordingly, the district court correctly admitted the 911 recording as well as the background testimony of the responding officers.

■ Appellant also contends that the challenged testimony violated Federal Rule of Evidence 403, arguing that the

probative value of the evidence was substantially outweighed by the dangers of unfair prejudice and needless presentation of cumulative evidence that resulted from multiple officers restating that they responded to a call relating to the defendant's possession of a firearm, which was the central issue in the case. On appeal, this court considers evidence under a Rule 403 challenge "in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Simpson*, 910 F.2d 154, 157 (4th Cir.1990) (citation and internal quotation marks omitted).

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." We have held that

> Rule 403 judgments are preeminently the province of the trial courts..... We will not upset such a decision except under the most extraordinary of circumstances, where a trial court's discretion has been plainly abused.

*Love*, 134 F.3d at 603 (alterations, citation, and internal quotation marks omitted).

"Relevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad *per se* rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387, 128 S.Ct. 1140, 170 L.Ed.2d 1 (2008) (citation omitted). Further, it is not appropriate for this court to conduct its own Rule 403 balancing test. As the Supreme Court held in *Mendelsohn*, "questions of relevance and prejudice are for the District Court to determine in the first instance," *id.*, except when " 'the record permits only one resolution of the factual

issue.' " *Id.* at n. 3 (quoting *Pullman–Standard v. Swint*, 456 U.S. 273, 292, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). Finally, as this court consistently has held, "[i]t is not an easy thing to overturn a Rule 403 ruling on appeal." *United States v. Udeozor*, 515 F.3d 260, 264 (4th Cir.2008). Where a party seeks to introduce evidence that is probative, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir.2008) (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir.1996)).

Laudermilt's failure to object at trial obviated the need for the district court to conduct a Rule 403 inquiry on the record. To show plain error in admitting such evidence, it is Laudermilt's burden to demonstrate that the challenged evidence was needlessly cumulative, outweighing its probative value. Although several police officers testified that they responded to a call regarding a firearm, we agree with the district court that those statements and the 911 call provided context that was relevant to explain to the jury why six officers appeared at Laudermilt's home on the night in question. Accordingly, we cannot conclude that the probative value of that evidence was "substantially outweighed by the danger of unfair prejudice, ... or needlessly presenting cumulative evidence." Fed.R.Evid. 403. Therefore, we decline to disturb the district court's admission of the evidence.

### B.

We next consider whether the district court erred at sentencing.

### 1.

█ Laudermilt first contends that the district court erred in overruling an objection to a four-level enhancement under

U.S.S.G. § 2K2.1(b)(6)(B) for use of a firearm by a prohibited person during the course of the commission of another felony, to wit, the offense of wanton endangerment with a firearm under West Virginia law.

The determination whether a firearm was possessed in connection with another felony offense under U.S.S.G. § 2K2.1(B)(6) is a factual determination. *Jenkins*, 566 F.3d at 163. We review a district court's factual findings for clear error. *Abu Ali*, 528 F.3d at 261.

Laudermilt argues that the conduct proven at trial did not amount to wanton endangerment with a firearm, a felony under West Virginia Code § 61–7–12, but was instead more akin to the offense of brandishing a firearm, a misdemeanor under West Virginia Code § 61–7–11. According to the Supreme Court of Appeals of West Virginia, "brandishing as defined by West Virginia Code § 61–7–11 is a lesser included offense within the definition of wanton endangerment under West Virginia Code § 61–7–12." *State v. Bell*, 211 W.Va. 308, 565 S.E.2d 430, 436 (2002) (footnote omitted). West Virginia's wanton endangerment statute provides, in pertinent part, as follows:

> Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, . . . .

W. Va.Code § 61–7–12.

The Supreme Court of Appeals of West Virginia has determined that discharge of a firearm is not an element of wanton endangerment with a firearm under section 61–7–12, and observed that this interpretation is consistent with that of other states that have addressed the issue with respect to similar statutes. *See State v. Hulbert*, 209 W.Va. 217, 544 S.E.2d 919, 930 (2001). In making this determination, the court specifically referenced as a "consistent case" *Key v. Commonwealth*, 840 S.W.2d 827, 829 (Ky.Ct.App.1992), which recognized that the pointing of a gun, whether loaded or unloaded, constitutes conduct that creates a substantial danger of death or serious injury. *Hulbert*, 544 S.E.2d at 930. Thus, not only can we find no West Virginia case requiring the pointing of a *loaded* firearm to establish the offense of wanton endangerment with a firearm, but indications are strong from the highest court of West Virginia that the offense is complete when one person wantonly points a firearm at another person, regardless whether the firearm is loaded.

Review of the record on appeal reveals that there was ample evidence that Laudermilt wantonly pointed a firearm at Kuri, and that in doing so, he endangered not only Kuri and her family, but also responding police officers and other bystanders. Accordingly, we find no error in the district court's application of a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for use of a firearm by a prohibited person during the course of the commission of another felony.

### 2.

■ Finally, Laudermilt challenges the district court's assignment of an additional criminal history point based on two 2007 misdemeanor convictions in Meigs County, Ohio for operating a motor vehicle under the influence and driving with a suspended license. Laudermilt pleaded guilty to both offenses, which resulted in suspended sentences, and he was not represented by counsel during the plea hearing. We review the district court's calculation of Laudermilt's criminal history de novo. *See Allen*, 446 F.3d at 527.

Laudermilt contends that the district court improperly counted the Ohio convic-

tions because they were obtained in violation of his Sixth Amendment right to counsel.[2] In *Alabama v. Shelton,* 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002), the Supreme Court held that although the right to counsel is not violated where a defendant receives a stand-alone sentence of probation, to be a valid conviction, a suspended sentence that could end up in an actual deprivation of liberty is not validly imposed unless the defendant receives the assistance of counsel or executes a knowing waiver of counsel. *Id.* at 674, 122 S.Ct. 1764.

This court need not reach the question whether assigning an additional criminal history point was appropriate. Even if the relevant convictions were excluded from the calculation of Laudermilt's criminal history, Laudermilt concedes that he would remain in the same criminal history category and that his advisory guidelines sentencing range would not change. The Supreme Court and this court have long held that a sentencing error is subject to harmless error analysis, and that remand is not required if "the error did not affect the district court's selection of the sentence imposed." *Williams v. United States,* 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992) (citation omitted); *see also United States v. McCrary,* 887 F.2d 485, 489 (4th Cir.1989) (*per curiam*) (noting that error in calculating criminal history category warrants remand only when possible sentencing ranges are different), *overruled on other grounds by United States v. Underwood,* 970 F.2d 1336 (4th Cir.1992). Based on Lauder-

milt's concession and our review of the record as a whole, we conclude that any error was harmless as it did not impact the district court's selection of the sentence.

Laudermilt argues that remand nevertheless is appropriate due to the collateral consequences of including an additional criminal history point. He contends that inclusion of the additional criminal history point resulted in a less favorable custody classification within the Bureau of Prisons (BOP) and caused him to be housed in a federal penitentiary rather than a less restrictive federal correctional institution.

An inmate has a right not to have erroneous information in a PSR used to deny him fair consideration for favorable prison programs. *Monroe v. Thigpen,* 932 F.2d 1437 (11th Cir.1991). We also have no doubt that criminal history points are considered by the BOP in determining an inmate's security level and custody classification. *See Brown v. LaManna,* 2008 WL 5062180, *2 (D.S.C. Nov. 19, 2008) (unpublished decision) (finding that BOP Program Statement 5100.08 uses points determined in the PSR as part of the "score" used in inmate classification). On direct review, however, this court is limited to determining whether the alleged error impacts the "selection of the sentence imposed" under *Williams.*

Other post-judgment consequences, while certainly important to Laudermilt, are matters which may or may not occur, may require factual development and administrative exhaustion within the BOP, and may, depending on the harm alleged, find other remedies, such as those avail-

---

**2.** Review of the relevant portions of the Joint Appendix reveals that in one waiver there is an initialed "Statement of Miranda Rights," immediately followed by a signed "Waiver of Rights" stating that "I have read the above statement of my rights and I understand each of those rights, and having these rights in mind I waive them and willingly make a statement." J.A. at 463. Although not identical, the second waiver contains similar substantive provisions. *Id.* at 464. Arguably, the waivers contained in the record are Fifth Amendment waivers, not Sixth Amendment waivers, as they make no mention of appellant's right to the assistance of counsel at trial.

able under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (stating that the basic fact or duration of incarceration are the "essence of habeas"); *Bunn v. Conley,* 309 F.3d 1002, 1007 (7th Cir.2002) (observing that habeas corpus is the appropriate remedy where the inmate seeks a "quantum change" in custody level) (citation and internal quotation marks omitted); *Leamer v. Fauver,* 288 F.3d 532, 542 (3d Cir.2002) (holding that "when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, [a civil rights action] is appropriate"); *Paschal v. Bauknecht,* 2007 WL 4568979, *1 (D.S.C. Dec.20, 2007) (unpublished decision) (noting that under § 2241 "an inmate can challenge the manner in which the BOP carries out his sentence"). Under *Williams, supra,* appellant's remedy is not to be found on direct review as this court's inquiry ends when we are satisfied that any alleged error in assigning criminal history points had no impact on the district court's selection of a sentence.

### III.

For the reasons given, we affirm the conviction and the sentence imposed by the district court.

*AFFIRMED.*