Phylene JEFFCOAT, Sam Jeffcoat and
Lawn, Inc., d/b/a the Lonely
Lady, Appellants,

v.

STATE of Alaska, DEPARTMENT OF
LABOR, Appellee.

No. S–1444.

Supreme Court of Alaska.

Feb. 20, 1987.

Dennis E. McKelvie, Downes and McKelvie, Fairbanks, for appellants.

Randy O. Olsen, Asst. Atty. Gen., Fairbanks, Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J. and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

PER CURIAM.

We have considered each of appellant's arguments and points on appeal. The record fully supports the Memorandum Decision and Order entered by Judge Mary E. Greene, which we adopt as the opinion of this court. It is set forth in full below.

### MEMORANDUM DECISION AND ORDER

This matter comes before the court upon both plaintiff's and defendant's motions for summary judgment. Plaintiff, the Alaska Department of Labor, on behalf of Cathy Adler, brought suit alleging defendant violated provisions of Alaska's wage and subsistence statutes.[1] For the Department of Labor to maintain the action, defendant must have been in an employee/employer relationship with Adler. Each party requests the court to determine whether or not an employee/employer relationship exists for purposes of Alaska's labor laws.

The basic facts are undisputed. Cathy Adler, a dancer, was in Las Vegas. There

---

1. AS 23.10.065, AS 23.10.110(a), AS 23.05.140(d) and AS 23.10.380.

she was recruited by a booking agency to dance for the defendant, the Lonely Lady (hereinafter the "Club"), in Alaska. The Club is owned by the Jeffcoats, who are also defendants. Adler was presented with the terms and conditions of the contract. Under the terms of the contract Adler agreed to work six days a week for a six-week period and to receive a flat weekly rate. Adler was told by management to obtain a business license.

Adler was required to clock in and to work eight hour shifts. The Club required three dances from her a night. She danced the first two dances largely clothed; the third dance was done while topless. Each dance lasted from nine to fifteen minutes, for a total of less than an hour of stage dancing. Adler spent the remaining hours soliciting table dances and drinks. Payment for the table dances was made by the individual customer, and Adler and the other women were allowed to keep such monies for themselves. The table dances and tips composed the primary source of income for the women.

The women were encouraged to have customers buy them drinks. Solicitation of drinks was made on a "pennies" basis. For each $5.00 billed to the customers, a woman received a penny. The pennies turned in at the end of each shift were considered gauges of a woman's popularity. The more popular dancers were assigned to better shifts, and the Club considered the pennies evidence that a woman was not in breach of her contract.

Plaintiff contends Adler was an employee of the Club. Defendants maintain Adler was an independent contractor.

Alaska's labor laws are based on the federal Fair Labor Standards Act (FLSA) of 1938. *McGinnis v. Stevens*, 543 P.2d 1221, 1238 (Alaska 1975); *Webster v. Bechtel*, 621 P.2d 890 [, 895] (Alaska 1980). Alaska has looked to federal case law for aid in interpreting Alaska's labor laws. *See, McGinnis v. Stevens*, [543 P.2d at 1238].

■ The distinction between employees and independent contractors has been viewed from various perspectives. In essence, the distinction varies depending upon the context of the dispute. Tort concepts of the distinction between employees and independent contractors have proven somewhat inappropriate in labor cases, as those concepts arose in an effort to limit employer liability under the doctrine of respondeat superior. [Wolfe, Determination of Employer-Employee Relationships in Social Legislation,] 41 Col.Rev. 1015 [, 1025–26] (1941). For the remedial purposes of the FLSA to be effectuated, there should be a broad interpretation of the term "employer," the term should be used "in the broadest sense ever ... in any act." *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 665 (5th Cir.1983).

■ Alaska has devised a "nature of the work" test to determine whether a worker should be designated an employee or an independent contractor under the worker's compensation statutes. *Grothe v. Olafson*, 659 P.2d 602 [, 605] (Alaska 1983). Alaska has not, however, directly addressed the distinction between employee and independent contractor for purposes of Alaska's counterpart to the FLSA. We must turn to federal authorities for appropriate case law.

■ The focal inquiry is whether the worker whose status is in question is within the class of persons meant to be protected by the Act. The court must determine whether the worker is dependent upon finding employment in the business of others. If the facts show such a dependency, the worker is an employee. *Castillo v. Givens*, 704 F.2d 181, 190 (5th Cir.1983). Two factors are critically significant: (1) how specialized is the nature of the work; and (2) whether the worker is in business for herself. *Id.* To aid analysis the courts have broken these factors into a six-part inquiry:

1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3)

the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Donovan v. Dialamerica Marketing, Inc.,* 757 F.2d 1376, 1382 (3d Cir.1985). No single factor is controlling. *Id.* These factors will be considered in turn, without losing sight of the fact that the Act is to protect those who, as a matter of economic reality, are dependent upon the business in which they render service. *Castillo v. Givens,* [704 F.2d] at 189; *Robicheaux v. Radcliff,* [697 F.2d] at 665.

1. *The degree of the alleged employer's right to control the manner in which the work was to be performed.*

Defendant argues that the Club exerted little control and presents the following facts for consideration. The women designed or purchased their own costumes, they created their own dancing routines and could request specific music from the disc jockey. Dancers were allowed to drink alcoholic beverages on the job, but they were not required to tend bar nor to act as cocktail waitresses. Table dances and tips were independently solicited by the women and constituted a major part of their income.

The factors indicating control are quite persuasive. Some control was exercised over costumes. The dancers were required to wear dresses on weekends, and country and western gear on Wednesdays. The music was at the Club's discretion. The Club rules provided that the disc jockey was free to play whatever he wanted, and dancers were not to complain. The dances were also controlled to an extent. While specific dance steps were at the dancers' discretion, dancers were required to do three dances onstage each shift: the first dance was to be performed fully clothed, the second dance involved removal of some item(s) of clothing, and the third dance was to be done while topless. Additionally, and significantly, the Club controlled the working hours of the dancers.

The "pennies" practice is extremely persuasive evidence of control. As was described earlier, the dancers, when not dancing, encouraged the customers to drink and to buy the dancers drinks. Each $5.00 billed a customer on the woman's behalf was marked by a penny. The more pennies a woman accrued the more "popular" she was assumed to be, and the Club rewarded her with better shifts. The evidence before the court indicates that the dancers' stage performances did not last more than an hour each shift. Each shift was eight hours. The remaining seven hours were spent either table dancing or soliciting pennies. The time spent soliciting pennies is indicative of control; in essence the women were selling liquor for the Club. Even the table dances were controlled; dancers were to strip to their waists, and only to their waists, and could not wear bikinis.

There are many other Club rules which indicate control. Should a dancer's friend have visited during a period when the dancer was offstage, the friend had to buy the dancer a drink. The dancers could only drink house drinks during working hours, and no complaints could be made about the drinks unless, for example, the glass was chipped. The women were also required to finish the drinks. In short, defendants exercised considerable control.

2. *The alleged employee's opportunity for profit or loss depending upon her managerial skill.*

▬ The contract was for a fixed sum. It did not matter how good the dancer was, or how many pennies the dancer collected, the sum and the hours would not vary. Dancers could, of course, receive tips for their stage performances and table dances. However, waitresses and bellhops also received tips for their services, and the existence of tips alone does not mandate independent contractor status.

**3.** *The alleged employee's investment in equipment or materials required for his task, or his employment of helpers.*

The dancer provided her own costumes. As defendant stated during her deposition, the dancer's trousseau could have been completed with purchases from Penneys. There is no indication the costumes varied significantly from street clothes. This factor does not weigh in favor of a finding of independent contractor status. Courts have found employee status even where welding equipment worth several thousand dollars was purchased by the worker, where the major part of the worker's time was spent in a manner not requiring use of the investment. *Robicheaux v. Radcliff Material, Inc.,* [697 F.2d at 665–66]. In the instant case, time spent soliciting drinks (pennies) did not require the use of the accoutrements of stripping.

█ Defendant also points to airfare and agent fees as evidence favorable to its position. However, airfare to Alaska is a given for any outsider and cannot be considered an investment in materials. The costs associated with the booking agency also do not represent an investment in equipment or materials. Though it is often the case that performers are booked into positions which result in independent contractor status, use of the booking agency is not determinative of the worker's status once the worker is on the job.

**4.** *Whether the service rendered required a special skill.*

Defendant states that dancing is an art, and that not everyone can perform it. The Club, however, hired dancers without knowing whether or not they had danced previously. Apparently the skill required for topless dancing was slight. Since neither long training nor highly developed skills were required, this factor must also weigh against independent contractor status. *See Donovan v. Sureway Cleaners,* 656 F.2d 1368, 1372 (9th Cir.1981).

**5.** *The degree of permanence of the working relationship.*

█ Adler signed a contract to work for a six week period, with an option to extend to eight weeks. Generally employees are hired for indefinite periods, whereas independent contractors work for periods established by contract. However, as plaintiff has argued, the period at issue is longer than some union calls. The court in *Castillo v. Givens,* [704 F.2d] at 191, held that cotton pickers hired from mid-June to mid-August qualified as employees for purposes of the act. At best this factor weighs only slightly in favor of independent contractor status.

**6.** *Whether the service rendered is an integral part of the alleged employer's business.*

Defendant believes that the dancer's services were largely cosmetic to the real function of the Club, which was to sell liquor. The facts do not support defendant's view. The facts clearly establish the integral nature of the womens' role to the sale of liquor, as evidenced by the pennies practice, and by the fact that patrons must pay double the normal drink price to purchase drinks for the dancers.

█ Turning to other arguments made by defendant, the parties' intent to contract is not a determinative factor. An employee is not permitted to waive employee status. *Robicheaux v. Radcliff Material, Inc.,* [697 F.2d] at 667. The fact that the parties "may not have had the intention to create an employment relationship is irrelevant...." *Donovan v. New Floridian Hotel, Inc.,* [676 F.2d 468, 470–471 (11th Cir.1982)].

█ The fact that management made the dancers purchase business licenses does not require the court to find independent contractor status. If the court found that business licenses resulted in independent contractor status "... this interpretation would permit wholesale evasion of the requirements of the F.L.S.A." *Castillo v. Givens,* [704 F.2d] at 192.

 On balance and in consideration of these factors, the court determines that Cathy Adler was an employee of the Club for purposes of Alaska's labor laws. Workers "... are often found to be 'employees' although they possess attributes common to independent contractors." *Robicheaux v. Radcliff Material, Inc.,* [697 F.2d at 665 n. 4].

In this matter, there is no genuine issue of material fact with respect to the issue of employee/contractor status. For reasons set forth above, the court concludes that plaintiff prevails on this issue as a matter of law. However, there are legitimate factual disputes as illustrated by defendants' statement of genuine issues which preclude the award of total summary judgment.[2] Therefore,

IT IS HEREBY ORDERED that plaintiff is granted partial summary judgment on the issue of employment status. Defendants' motion for summary judgment is denied.

**2.** [These "genuine issues" have since been resolved by stipulation of the parties.]