588 S.E.2d 177

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Robert Joel McCRAINE, Defendant Below, Appellant.**

**No. 30592.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2003.

Decided May 16, 2003.

Concurring and Dissenting Opinion of Justice Davis May 20, 2003.

Davis, J., concurred in part and dissented in part with opinion in which Maynard, J., joined.

Robert C. Stone, Jr., Martinsburg, for the Appellant.

Pamela Jean Games–Neely, Prosecuting Attorney, Christopher C. Quasebarth, Assistant Prosecuting Attorney, Martinsburg, for the Appellee.

ALBRIGHT, Justice.

This case is the appeal of the defendant below, Robert Joel McCraine (hereinafter "Appellant"), from the August 27, 2001, sentencing order of the Circuit Court of Berkeley County stemming from Appellant's conviction by jury trial of a felony charge of third offense driving under the influence (hereinafter "DUI") and a misdemeanor charge of first offense driving while the li-

cense to do so has been revoked for DUI (hereinafter "driving revoked for DUI"). Appellant seeks to overturn the convictions on multifarious grounds. After completing a detailed review of the petition, briefs, record, arguments of counsel and applicable law with regard to each assigned error, we reverse the convictions and remand the case for further proceedings for the reasons set forth below.

## I. Facts and Procedural History

Around 2:30 a.m. on June 26, 1998, Appellant was driving in the city of Martinsburg, West Virginia. Upon observing Appellant's car speeding in the city proper, an on-duty Martinsburg policeman, Officer John Sherman, stopped Appellant for speeding. At the time of the stop, which actually took place outside of the city limits, Officer Sherman discovered that Appellant exhibited signs of intoxication. According to the State, Appellant did not successfully complete several field sobriety tests due in part to his inability to comply with the officer's directions, and Appellant also refused to take a secondary breath test. Based upon his observations, Officer Sherman arrested Appellant and took him to magistrate court, where the officer filed a criminal complaint alleging two charges: third offense DUI, a felony, and first offense driving revoked for DUI, a misdemeanor.

According to Appellant, at or before a preliminary hearing held on November 6, 1998, he invoked his statutory right to trial in magistrate court[1] of the misdemeanor charge by moving to sever the charges. The magistrate granted the motion. As related by Appellant, at a later hearing on the misdemeanor charge the State moved to dismiss

the complaint, and the motion was granted by the magistrate without prejudice.[2]

The felony charge proceeded to preliminary hearing on November 6, 1998, at which the magistrate found that the requisite probable cause existed to bind the matter over to the grand jury. During the February 1999 term of the Berkeley County Grand Jury, Appellant was named in a two-count indictment: Count I charged Appellant with the felony of third offense DUI in violation of West Virginia Code § 17C–5–2(k);[3] Count II charged Appellant with the misdemeanor of driving a motor vehicle when the privilege to drive has been revoked for DUI in violation of West Virginia Code § 17B–4–3(b).[4] Appellant was not arraigned on these charges until August 7, 2000.[5]

Among the issues considered by the lower court at an October 31, 2000, pretrial hearing which are relevant to this appeal, were Appellant's motions to suppress evidence obtained as a result of the arrest; to bifurcate jury consideration of the felony DUI charge from the prior DUI convictions; to sever the two counts of the indictment for separate trials; and to dismiss both charges before the circuit court and remand the matters, as appropriate, for trial in magistrate court. The record reflects that these motions were denied after receiving individual attention by the lower court at the hearing, and that the basis for the denial of each was later memorialized by the court in a Pre–Trial Hearing Order entered on January 23, 2001.

A two-day trial by jury was begun on November 2, 2000. The State rested following the testimony of its sole witness, Officer Sherman. Thereafter, Appellant moved for and was denied judgment of acquittal for both charges. At the conclusion of its delib-

---

1. W. Va.Code § 50–5–7 (1976) (Repl.Vol.2000).

2. The dismissal of the misdemeanor charge in magistrate court was not part of the record in this appeal.

3. West Virginia Code § 17C–5–2 was amended and reenacted in 2001; however, none of the 2001 legislative amendments substantively changed the DUI offense charged.

4. West Virginia Code § 17B–4–3 was amended and reenacted in 1999. Since no issue is raised in this appeal leading us to conclude otherwise,

Appellant apparently was charged, sentenced and convicted under the provisions of the 1994 statute in effect at the time of the offense. Nonetheless, the 1999 amendments did not materially affect the definition of the offense or penalties it carries.

5. Appellant failed to appear in court on the initial date set for arraignment, February 25, 1999. Although a capias was issued on that same date and subsequently reissued, arrest of Appellant was not accomplished until August 2000.

erations on November 3, 2000, the jury returned a guilty verdict as to both counts of the indictment. Post trial, Appellant filed another motion for judgment of acquittal, which the trial court again denied. Thereafter on January 9, 2001, the trial court sentenced Appellant to six months in jail for the driving revoked for DUI conviction and one-to-three years in the penitentiary for the third offense DUI conviction, with the sentences to run consecutively. The trial court then suspended the penitentiary sentence and granted Appellant the alternative sentence of home incarceration.[6] The sentencing order was reentered on August 27, 2001, after the lower court granted Appellant's motion to do so in order to enlarge the appeal period. It is from the August 27, 2001, order that this appeal is taken.

## II. Standard of Review

■ Appellant assigns numerous and diverse errors to the trial court proceedings. Because the issues raised involve varying standards of review, we will discuss each alleged error separately and set forth any specific standard of review applicable to a particular error at the beginning of each discussion. Nevertheless, we note "[g]enerally [ ] [that] findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. However, ostensible findings of fact, which entail the application of law or constitute legal judgments which transcend ordinary factual determinations, must be reviewed *de novo*." Syl. Pt. 1, in part, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996).

## III. Discussion

Appellant raises the following assignments of error in this appeal: (1) testimony of the arresting officer should have been suppressed because it involved information obtained during an invalid arrest; (2) the third

---

**6.** The alternative sentence was revoked during January 2002 because Appellant failed to inform the probation officer of a change in residence.

**7.** The provisions of West Virginia Code § 8–14–3 relevant to the case at hand are as follow:

The chief and any member of the police force ... of a municipality ... shall have all of the powers, authority, rights and privileges within the corporate limits of the municipality

---

offense DUI charge should have been dismissed because one of the predicate DUI convictions resulted from an uncounseled guilty plea; (3) the two charges should have been severed due to the prejudicial effect of trying them in a single proceeding; (4) judgment of acquittal should have been entered with regard to the driving revoked for DUI charge because the State failed to prove knowledge of the revocation as an essential element of the crime; (5) the pending DUI charge should have been bifurcated from consideration of proof of prior convictions; and (6) the jury should have been instructed that first offense DUI and second offense DUI are lesser included offenses of third offense DUI. We will consider each of these alleged errors in turn.

### A. Motion to Suppress

■ When reviewing challenges to a circuit court's suppression hearing ruling, we are guided by the following review standard:

On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference.

Syl. Pt. 3, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).

■ Appellant claims that the trial court erred by permitting the jury to consider testimony of Officer Sherman regarding his contact with Appellant on the night of the incident because the stop and subsequent arrest occurred outside the officer's territorial jurisdiction. The State asserts that the lower court ruling is in accord with the provisions of West Virginia Code § 8–14–3 (1990) (Repl.Vol.1998),[7] which defines the authority

---

with regard to the arrest of persons, the collection of claims, and the execution and return of any search warrant, warrant of arrest or other process, which can legally be exercised or discharged by a deputy sheriff of a county. In order to arrest for the violation of municipal ordinances and as to all matters arising within the corporate limits and coming within the scope of his official duties, the powers of any

and duties of municipal police officers. Appellant counters by arguing that this statutory provision was found to be inapplicable in a very similar situation decided by this Court in *State ex rel. State v. Gustke*, 205 W.Va. 72, 516 S.E.2d 283 (1999). We fail to see such similarity. Unlike the facts in *Gustke*, the record in the case before us contains unrefuted evidence that the officer was on duty, a misdemeanor was committed in the officer's presence within the city proper and the officer began the stop by turning on his lights before he left the city limits. Having begun the stop within the city limits, the officer was acting within his authority as set forth in West Virginia Code § 8-14-3 by completing a stop within the county where the municipality is situate for an offense committed in the officer's presence within the corporate limits of the city. Consequently, we do not find the lower court was clearly wrong when it denied the motion to suppress.

### B. Motion to Dismiss

Appellant next contends that the trial court erred in denying his motion to dismiss because a third offense DUI charge could not be proven since the State did not adequately demonstrate Appellant had knowingly and voluntarily waived his right to counsel before tendering a guilty plea to a 1990 DUI conviction.

■ Our determination of whether a waiver of the right to counsel is valid is guided by our holding in syllabus point one of *State ex rel. Widmyer v. Boles*, 150 W.Va. 109, 144 S.E.2d 322 (1965), which states:

The right of the defendant in a criminal proceeding to the assistance of counsel is a fundamental right, the waiver of which will not be presumed by the failure of the accused to request counsel, by the entry of a guilty plea or by reason of a record silent concerning the matter of counsel and the conviction of a defendant in the absence of counsel or of an affirmative showing of an intelligent waiver of such right is void.

We have said that a criminal defendant's right to counsel is effectively waived when the conduct of the accused demonstrates that the waiver was knowingly and intelligently made. Syl. Pt. 1, *State v. Britton*, 157 W.Va. 711, 203 S.E.2d 462 (1974). Prima facie evidence of waiver of the right to counsel includes the completion of a written waiver form by a criminal defendant. *State v. Armstrong*, 175 W.Va. 381, 386–87, 332 S.E.2d 837, 842 (1985), *overruled on other grounds by State v. Hopkins*, 192 W.Va. 483, 453 S.E.2d 317 (1994). This Court has further recognized that once the State produces such evidence it is incumbent upon the accused to present evidence which would prevail against a finding of an informed waiver. 175 W.Va. at 386–87, 332 S.E.2d at 842.

■ In the case before us, the State's prima facie evidence presented at the pretrial hearing of the offer and waiver of counsel was a certified copy of a waiver of counsel form signed by Appellant in magistrate court the same day in 1990 that his plea of guilty to a DUI charge was submitted. There is no indication in the record that Appellant presented evidence at the hearing which would counter a finding of informed waiver. Instead, Appellant argued, as he does here, that the waiver document, standing alone, is insufficient to establish a knowing and voluntary waiver of counsel. Appellant urges this Court to require the circuit court to conduct a hearing in cases such as his at which a magistrate or court clerk is called as a wit-

---

... policeman ... shall extend anywhere within the county or counties in which the municipality is located, and any such ...policeman ... shall have the same authority of pursuit and arrest beyond his normal jurisdiction as has a sheriff. For an offense committed in his presence, any such officer may arrest the offender without a warrant and take him before the mayor or police court or municipal court to be dealt with according to law....

It shall be the duty of ... police officers of every municipality ... to aid in the enforcement of the criminal laws of the state within the municipality... and to cause the arrest of or arrest any offender and take him before a magistrate to be dealt with according to the law. Failure on the part of any such ... officer to discharge any duty imposed by the provisions of this section shall be deemed official misconduct for which he may be removed from office. Any such ... officer shall have the same authority to execute a warrant issued by a magistrate, and the same authority to arrest without a warrant for offenses committed in his presence, as a deputy sheriff.

ness to authenticate any waiver document, the magistrate before whom the waiver was signed offers testimony about the manner and circumstances under which the waiver was obtained, and any discrepancy between the identifying information of the person who signed the waiver and the defendant against whom charges are pending is resolved.[8]

■■■■ It is apparent from the record that the lower court afforded Appellant the opportunity at the pretrial hearing to challenge the validity of his waiver of the right to counsel in the 1990 DUI case. Nonetheless, Appellant chose not to actively challenge the State's prima facie evidence through factual development of the circumstances surrounding the signing of that form. Appellant was free to call the magistrate who accepted the waiver and plea in 1990 as a witness but elected not to do so. Likewise, Appellant did not raise serious objection as to the legitimacy of the signature on the waiver related documents the State presented to the lower court. Furthermore, Appellant's claim that the court documents were not properly authenticated by the magistrate court custodian of the record is misguided.

■■■■ The Legislature did not designate magistrate courts, or the predecessor justice of the peace courts, as courts of record.[9] Historically, no centralized method of record keeping was statutorily prescribed under the justice of the peace system, and each justice of the peace was responsible for his or her own docket books as well as records of judicial determinations and fiscal transactions. The general means by which occurrences in the justice of the peace court were proven in subsequent court proceedings was through the in-person testimony of the justice of the peace. With the 1976 amendment and reenactment of Chapter 50 of the West Virginia Code to establish magistrate courts in the state, the Legislature directed the development of a consolidated system of record keeping for the magistrate courts by requiring the clerk of each magistrate court "to establish and maintain appropriate dockets and records in a centralized system for the magistrate court." W.Va.Code § 50–1–8. *See also* W.Va.Code § 50–3–7 (records of completed magistrate court proceedings to be forwarded and maintained by magistrate court clerk in accord with rules of the supreme court of appeals); W.Va. Admin. R. Mag. Ct. 12 (magistrate court clerks to maintain magistrate court records according to the prescribed record retention schedule). In short, magistrate court clerks are the statutorily designated custodians of magistrate court records.

■■■■ This court has heretofore recognized that court documents are public records which qualify them as an exception to hearsay and, when certified by the custodian, are self authenticating documents under the West Virginia Rules of Evidence, Rule 803(8)(A)[10] and Rule 902(4)[11] respectively.

---

**8.** Appellant notes in his brief that the signature line on the waiver form contains the name "Joel McCraine" and contends that no evidence was ever offered to show that Appellant Robert Joel McCraine is the same person as Joel McCraine. Since this issue was raised in passing and is not fully briefed by either party, we simply recognize it is axiomatic that when an enhanced punishment for a particular criminal offense is sought because of a prior conviction, the present defendant must be the same person who was previously convicted. It necessarily follows that proof of such identity is an essential part of the case for the prosecution. *State v. Cline,* 125 W.Va. 63, 22 S.E.2d 871 (1942); *State v. Lawson,* 125 W.Va. 1, 22 S.E.2d 643 (1942); *State v. Fisher,* 123 W.Va. 745, 18 S.E.2d 649 (1941); *State v. Stout,* 116 W.Va. 398, 180 S.E. 443 (1935); *State v. McKown,* 116 W.Va. 253, 180 S.E. 93 (1935).

**9.** In 1994, the Legislature amended and reenacted West Virginia Code § 50–5–8 so as to require magistrate court jury trials be electronical-

ly recorded and in that context declared that "the magistrate court shall be a court of limited record." *Id.*

**10.** Rule 803(8)(A) of the West Virginia Rules of Evidence deals with hearsay exceptions when the availability of the declarant is immaterial and states in pertinent part:

(8) Public records and reports.—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency
. . . .

**11.** The relevant portion of Rule 902(4) of the West Virginia Rules of Evidence reads as follows:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

. . .

(4) Certified copies of public records.—A copy of an official record or report or entry

*See State v. Morris,* 203 W.Va. 504, 509 S.E.2d 327 (1998); *Hess v. Arbogast,* 180 W.Va. 319, 376 S.E.2d 333 (1988). *See also* W.Va. R. Evid. 1005 (certified copy of public record admissible as original) and W.Va.Code § 57-1-7 (1923) (Repl.Vol.1997) (attested copy of a court record admissible in lieu of original). Procedurally, official public records are proven in circuit court criminal proceedings in the same manner as that used in civil cases. W.Va. R.Crim. P. 27. Accordingly, court records "may be evidenced ... by a copy attested by the officer having the legal custody of the record, or by the officer's deputy, and accompanied by a certificate that such officer has the custody." W.Va. R. Civ. 44. Consequently, absent specific questions with respect to the trustworthiness of the document, variance of the certified copies from the originals or similar challenges to the validity or contents of the certified record, court clerks would not need to be routinely called as witnesses in order for documents of a court to be properly admitted into evidence.

As a result of our review, we find no basis to reverse the lower court's denial of the motion to dismiss.

### C. Motion to Sever

 The question of whether to grant a motion to sever is generally within the sound discretion of the trial court. Syl. Pt. 6, *State v. Mitter,* 168 W.Va. 531, 285 S.E.2d 376 (1981). However, as we have recently decided, a trial court's discretion is significantly narrowed when the severance request is made pursuant to a criminal defendant's statutory right to trial in magistrate court and the request poses no conflict with double jeopardy principles. *State ex rel. Games-Neely v. Sanders,* 211 W.Va. 297, 565 S.E.2d 419 (2002).

 Appellant alleges that the lower court committed reversible error by not severing the two charges in the indictment when Appellant requested such severance at a pretrial hearing because a unitary trial of both offenses would create a substantial risk of prejudice. At the time the present case was

before the lower court, Appellant correctly asserted that the relevant considerations for deciding whether to grant a motion to sever were contained in *State v. Ludwick,* 197 W.Va. 70, 475 S.E.2d 70 (1996). In reliance on C.A. Wright, Federal Practice and Procedure: Criminal 2d § 222 (1982), we said in *Ludwick,* that:

> it is incumbent upon a trial judge to consider in some depth a motion to grant a severance if: (a) a joint trial will raise so many issues that a jury may conclude that the defendant is a "bad man" and must have done something, and consequently will convict him as a "bad man" rather than on a particular charge; (b) if one offense may be used to convict him of another, though proof of that guilt would have been inadmissible at a separate trial; and (c) the defendant may wish to testify in his own defense on one charge but not on another.

197 W.Va. at 73, 475 S.E.2d at 73. The order denying the severance motion appears to give due consideration to the *Ludwick* factors. The order specifically states:

> **II. Defendant's Motion for Severance:** Considering the Defendant's failure to advise the Court and the State at pretrial whether he actually would be testifying in defense of the driving while suspended for DUI charge or the third offense DUI charge; the resulting failure to specifically identify what prejudice if any would befall him if the Court did not grant a severance, and notions of judicial economy, absent any compelling factors to weigh in the balance, the Court DENIES the Defendant's motion for severance.

We had occasion subsequent to *Ludwick* to hold that, in general, the trial of DUI charges and driving revoked for DUI charges should be severed to avoid unfair prejudice. Syl. Pt. 5, *State v. Dews,* 209 W.Va. 500, 549 S.E.2d 694 (2001). Nevertheless, the final decision regarding severance remained in the sound discretion of the trial

therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compila-

tions in any form, certified as correct by the custodian or other person authorized to make the certification ....

court. Syl. Pt. 6, *State v. Mitter*, 168 W.Va. 531, 285 S.E.2d 376 (1981). In consideration of the facts of this case and the legal precedent at the time this case was finally decided below, we cannot say that the trial court abused its discretion in denying the motion to sever when it considered but did not find that trying the charged offenses in one proceeding would create unfair prejudice for the accused because there was not a convincing showing that Appellant had important testimony regarding one charge and a compelling reason to refrain from testifying on the other charge. *See State v. Milburn*, 204 W.Va. 203, 511 S.E.2d 828 (1998).

In the course of this appeal, which Appellant raises in his brief, this Court's decision in *State ex rel. Games–Neely v. Sanders* was released.[12] Appellant claims that the facts in *Games–Neely* mirror the circumstances surrounding the severance issue now before us and makes it absolute error for a magistrate to dismiss, over a defendant's objection, a misdemeanor charge validly brought in magistrate court with a companion felony charge so that the State may seek to join the offenses in a circuit court indictment.

▮▮▮▮ We initially note that Appellant is entitled to any benefit he may derive from our decision in *Games–Neely* based on our rulings regarding limited retroactivity of the rulings of this Court. In the context of a criminal appeal, we held in syllabus point three of *State v. Gangwer*, 168 W.Va. 190, 283 S.E.2d 839 (1981), that:

> In the absence of any countervailing factors, where a new rule of criminal law is made of a nonconstitutional nature, it will be applied retroactively only to those cases in litigation or on appeal where the same legal point has been preserved.

Appellant properly preserved the severance issue and no countervailing reasons have been raised regarding the retroactive application of the new rule announced in *Games–Neely* regarding severance. Consequently, we now contemplate the relevance of *Games–Neely* to the severance issue before us in this appeal.

▮▮▮▮ Although consideration of the applicable rulings in *Games–Neely* is proper in this case, we find that Appellant misapprehends the extent of those rulings. We began our discussion in *Games–Neely* with the recognition that the State has a mandatory duty under Rule 8(a) of the West Virginia Rules of Criminal Procedure to join in a single charging document all offenses arising from

> "the same act or transaction, or on two or more acts or transactions, connected together or constituting parts of a common scheme or plan, whether felonies, misdemeanors or both, provided that the offenses occurred in the same jurisdiction, and the prosecuting attorney knew or should have known of all the offenses, or had an opportunity to present all offenses prior to the time that jeopardy attaches in any one of the offenses."

211 W.Va. at 303, 565 S.E.2d at 425, quoting Syl. Pt. 3, *State ex rel. Forbes v. Canady*, 197 W.Va. 37, 475 S.E.2d 37 (1996). Consequently, no error is committed because a magistrate grants the State's motion to dismiss charges, including charges the magistrate previously severed due to the defendant's assertion of the statutory right to trial in magistrate court. We specifically held in syllabus point seven of *Games–Neely* that "[t]he statutory right to trial in magistrate court granted by West Virginia Code § 50–5–7 (1976) (Repl.Vol.2000) cannot be exercised if the misdemeanor trial in magistrate court would bar the felony trial in circuit court, based upon principles of double jeopardy." 211 W.Va. at 301, 565 S.E.2d at 422. We further observed in *Games–Neely* that even though the State has a duty to join related offenses, the trial court retains the discretion to sever the charges under the provisions of Rule 14(a) of the West Virginia Rules of Criminal Procedure on the grounds that joinder of the offenses is prejudicial to the defendant. We thereafter found the trial court's discretion tempered by the statutory right to trial in magistrate court by holding in syllabus point nine that:

> West Virginia Code § 50–5–7 (1976) (Repl.Vol.2000), granting the right to trial

---

**12.** The *Games–Neely* opinion was filed on May 24, 2002, and the date of the sentencing order from which the present case is appealed is August 27, 2001.

in magistrate court, is couched in terms of a right rather than simply a procedural norm. It is designed to grant a person first charged in magistrate court the right to maintain the action in magistrate court. In applying this statute, courts should attempt to provide the statute as much force and effect as possible without impinging upon established double jeopardy principles.

*Id.,* 556 S.E.2d at 423. Application of this holding to the facts in *Games–Neely* resulted in our finding that:

[t]he defendant based the request for remand upon the right to trial in magistrate court conferred by statute. If application of the statute would prevent trial of the related felony in circuit court based upon constitutional principles of double jeopardy, a lower court could not remand the misdemeanor to magistrate court and would be compelled to retain both the felony and the misdemeanor for trial in circuit court. Where, as in the present case, application of the statute does not create a situation in which separate prosecution of the felony would be barred by principles of double jeopardy, the statutory right to trial of the misdemeanor counts in magistrate court must prevail.

*Id.* at 307, 565 S.E.2d at 429.

We concluded that each of the offenses with which the defendant in *Games–Neely* was charged did not violate double jeopardy principles because each of the charges required an element of proof that the other did not. Among the charges levied against the defendant in *Games–Neely* were the misdemeanors of DUI and driving with a revoked license. Although Appellant herein faced a felony charge of DUI third offense as well as the misdemeanor of driving revoked for DUI, no double jeopardy issues are implicated which would require a unitary trial because each of the charges requires an element of proof that the other does not.

■ Despite our finding that the trial court did not abuse its discretion in the case

sub judice by denying the severance motion under the controlling legal precedents at the time the ruling was made, any retrial of this offense is subject to application of the new legal principles announced in *Games–Neely.* Consequently, because the Appellant invoked his statutory right to trial of the misdemeanor charge in magistrate court, the request to remand must be honored by the lower court inasmuch as no double jeopardy problems are implicated.

### D. Motion for Judgment of Acquittal of Driving Revoked for DUI Charge

Appellant next claims that the trial court erred by not granting his motion for judgment of acquittal following the close of the State's evidence because no proof was submitted showing that Appellant had actual knowledge that his driving privileges were revoked for DUI. Appellant alleges that this error was compounded when the trial court did not instruct the jury that actual knowledge of license revocation is an essential element of the offense of driving revoked for DUI. Embodied in both purported errors is an issue of first impression for this Court: whether knowledge, actual or otherwise, of the revocation of a driver's license is a necessary element of the offense of driving revoked for DUI. Since this issue necessarily involves "an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, in part, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

■ We naturally turn to the language of the statute in question at the inception of our review because "[w]hen a statute is clear and unambiguous and the legislative intent is plain, it is the duty of the courts to apply the statute in accordance with the legislative intent therein clearly expressed." Syl. pt. 7, *State v. Bragg,* 152 W.Va. 372, 163 S.E.2d 685 (1968).

■ West Virginia Code § 17B–4–3(b) (1999) (Repl.Vol.2000) [13] defines the offense of driving revoked for DUI as follows:

---

**13.** As observed in note 2 *infra,* the 1999 amendments to this statute made no substantive change to the offense or punishment prescribed by this statute and do not affect the issue raised in the case before us.

(b) Any person who drives a motor vehicle on any public highway of this state at a time when his or her privilege to do so has been lawfully revoked for driving under the influence of alcohol, controlled substances or other drugs, or for driving while having an alcoholic concentration in his or her blood of ten hundredths of one percent or more, by weight, or for refusing to take a secondary chemical test of blood alcohol content, is, for the first offense, guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for six months and in addition to the mandatory jail sentence, shall be fined not less than one hundred dollars nor more than five hundred dollars; for the second offense, the person is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for a period of one year and, in addition to the mandatory jail sentence, shall be fined not less than one thousand dollars nor more than three thousand dollars; for the third or any subsequent offense, the person is guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary for not less than one year nor more than three years and, in addition to the mandatory prison sentence, shall be fined not less than three thousand dollars nor more than five thousand dollars.

As is evident from the statute, which Appellant concedes, knowledge is not expressly stated as an element of the offense. Appellant maintains instead that the element of "lawful revocation" implies that the licensee have actual knowledge of the revocation in order to commit the offense because West Virginia Code § 17C–5A–1(c), detailing the driver's license revocation procedure, provides that a revocation is not effective until ten days after receipt of the copy of the order of revocation. West Virginia Code § 17C–5A–1, provides in pertinent part that:

(a) Any person who is licensed to operate a motor vehicle in this state and who drives a motor vehicle in this state shall be deemed to have given his or her consent by the operation thereof, subject to the provisions of this article,[14] to the procedure set forth in this article for the determination of whether his or her license to operate a motor vehicle in this state should be revoked because he or she did drive a motor vehicle while under the influence of alcohol, controlled substances or drugs, or combined influence of alcohol or controlled substances or drugs, or did drive a motor vehicle while having an alcoholic concentration in his or her blood of ten hundredths of one percent or more, by weight, or did refuse to submit to any designated secondary chemical test . . . .

. . . .

(c) If . . . the commissioner shall determine that a person was arrested for an offense described in section two, article five of this chapter . . . and that the results of any secondary test or tests indicate that at the time the test or tests were administered the person had, in his or her blood, an alcohol concentration of ten hundredths of one percent or more, by weight, or at the time the person was arrested he or she was under the influence of alcohol, controlled substances or drugs, the commissioner shall make and enter an order revoking the person's license to operate a motor vehicle in this state. . . . A copy of the order shall be forwarded to the person by registered or certified mail, return receipt requested, and shall contain the reasons for the revocation or suspension and describe the applicable revocation or suspension periods provided for in section two [§ 17C–5A–2] of this article. No revocation or suspension shall become effective until ten days after receipt of a copy of the order.

Also related to our inquiry is the following portion of the general statute governing notices which the Division of Motor Vehicles is authorized or required to make:

The giving of notice by mail is complete upon the expiration of four days after such deposit of said notice. Proof of the giving of notice . . . may be made by the certificate of any officer or employee of the

---

**14.** Article 5A of Chapter 17C is captioned as: ADMINISTRATIVE PROCEDURES FOR SUSPENSION AND REVOCATION OF LICENSES FOR DRIVING UNDER THE INFLUENCE OF ALCOHOL, CONTROLLED SUBSTANCES OR DRUGS.

department or affidavit of any person over the eighteen years of age, naming the person to whom such notice was given and specifying the time, place, and manner of the giving thereof.

W.Va.Code § 17A–2–19 (1951) (Repl.Vol. 2000).

■■■ Although the statute defining the offense of driving revoked for DUI is silent with regard to criminal intent or mens rea, this Court has held that the "[t]he legislative purpose to dispense with the element of intent in a statutory crime must be clearly expressed." Syllabus, *State v. Great Atlantic & Pacific Tea Co. of America*, 111 W.Va. 148, 161 S.E. 5 (1931).[15] We do not find such a clear and unambiguous expression in the provisions of the statute defining the subject offense. Nonetheless, a reading of the plain language of the statute is susceptible to more than one interpretation which thus requires us to construe the statute. Our general goal in construing a statute is to determine and give effect to legislative intent. Syl. Pt. 1, *Smith v. State Workmen's Compensation Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). We undertake this task with the understanding that ambiguous criminal statutes "must be strictly construed against the State and in favor of the defendant." Syl. Pt. 3, *State ex rel. Carson v. Wood*, 154 W.Va. 397, 175 S.E.2d 482 (1970). We further note that in cases such as the one before us which involve multiple statutory provisions our task is to read and apply a statute

as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

Syl. Pt. 5, in part, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

Other jurisdictions which have been faced with the similar task of determining whether criminal intent is an element of driving while a license to do so has been revoked or suspended have reached varying results. Although there is not a clear consensus among the other states which have considered similarly worded driving while revoked and notification of revocation statutes, a significant number have held that the element of knowledge of revocation must be read into the statute. *Jeffcoat v. State*, 639 P.2d 308 (Alaska Ct.App.1982); *Jolly v. People*, 742 P.2d 891 (Colo.1987); *State v. Keihn*, 542 N.E.2d 963 (Ind.1989); *State v. McCallum*, 321 Md. 451, 583 A.2d 250 (1991); *Zamarripa v. First Judicial District Court*, 103 Nev. 638, 747 P.2d 1386 (1987); *State v. Herrera*, 111 N.M. 560, 807 P.2d 744 (1991); *State v. Atwood*, 290 N.C. 266, 225 S.E.2d 543 (1976); *Bryant v. State*, 643 S.W.2d 241 (Tex.Ct.App.1982); *State v. Collova*, 79 Wis.2d 473, 255 N.W.2d 581 (Wis.1977). *But see State v. Swain*, 245 Conn. 442, 718 A.2d 1 (1998); *King v. State*, 226 Ga.App. 576, 486 S.E.2d 904 (1997); *People v. Johnson*, 170 Ill.App.3d 828, 121 Ill. Dec. 488, 525 N.E.2d 546 (1988); *State v. Sonderleiter*, 251 Iowa 106, 99 N.W.2d 393 (Iowa 1959); *State v. Pickering*, 432 So.2d 1067 (La.Ct.App.1983); *State v. Grotzky*, 222 Neb. 39, 382 N.W.2d 20 (1986); *State v. Buttrey*, 293 Or. 575, 651 P.2d 1075 (1982).

The Supreme Court of Wisconsin summarized the reasons why it found that some requirement of guilty knowledge or criminal intent was intended by the legislature in establishing the offense by stating:

"The driving of a motor vehicle by one who has neither knowledge nor reason to know that his operating privilege is or may have been revoked is a wholly routine and innocent act. Absent some unmistakable indication in the words of the statute, we are unwilling to conclude that the legislature intended to subject a defendant who is innocent of any negligent or intentional

---

**15.** Criminal intent is presumed generally to be an element of criminal offenses in the absence of clear legislative intent to the contrary. *See United States v. Gypsum Co.*, 438 U.S. 422, 437–38,

98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (more than an omission of language specifying criminal intent is necessary to justify dispensing with an intent requirement).

wrongdoing to the harsh consequences [16] a conviction ... [the offense statute] entails. To inflict substantial punishment on a person who is innocent of any intentional or negligent wrongdoing offends the sense of justice and is ineffective."

*State v. Collova*, 255 N.W.2d at 587–88. Similar concern was expressed by other jurisdictions which concluded that knowledge was an implied element of the offense.[17]

We find this reasoning persuasive. Furthermore, the overall statutory scheme, including the means by which a lawful revocation of a license is to occur, supports the conclusion that the Legislature intended that an accused have knowledge of the license revocation in order to be convicted and punished for the offense of driving revoked for DUI.

■ Accordingly, we conclude that knowledge of the revocation of a driver's license is an element of the offense set forth in West Virginia Code § 17B–4–3(b) of driving while one's license is revoked for DUI. Prima facie evidence of knowledge of the revocation of a license to drive a motor vehicle is established by the State offering proof of mailing the notice of revocation to the licensee in compliance with West Virginia Code §§ 17C–5A–1 (1994) and 17A–2–19 (1951), (Repl.Vol.2000). Defendants in such situations may rebut the inference of knowledge of the revocation, although lack of knowledge must be the result of something other than a defendant's wrongful or dilatory conduct. Consequently, failure to notify the Division of Motor Vehicles of a change in address as required by West Virginia Code § 17B–2–13 (1951) (Repl.Vol.2000) or eluding delivery of the notice would not defeat the inference.

■ The State admits that it did not establish proof of notice of revocation in this case because knowledge had not been conclusively established as a necessary element of the charged offense. As a result of our decision requiring such proof and in order to provide the State the opportunity to comply with the conclusions we announce today, we reverse Appellant's conviction for driving revoked for DUI and remand the matter for a new trial.[18]

### E. Motion to Bifurcate

Appellant maintains that the lower court also erred by denying his motion to bifurcate the issues with respect to the third offense DUI charge so that a jury could decide the pending DUI charge without consideration of prior DUI convictions which he intended to challenge. Appellant's fundamental argument is that the lower court misinterpreted our decision in *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999), by finding that Appellant did not mount a meritorious challenge against the legitimacy of a prior conviction.[19] Appellant more pointedly contends that this Court's failure in *Nichols* to define what constitutes a meritorious challenge to a prior conviction simply creates the illusion that criminal defendants in these cases have a meaningful alternative to stipulation to the prior convictions.

■ We review this matter de novo because the argument Appellant advances leads us to revisit our legal determination in *State v. Nichols* as it relates to the circumstances under which bifurcation is warranted in cases involving challenges to prior convictions as status elements of a recidivist crime such as second and subsequent offenses of DUI. *State v. Dews*, 209 W.Va. 500, 549 S.E.2d 694 (2001).

---

**16.** The Wisconsin statutory penalties for the misdemeanor offense are less severe than those of West Virginia; in Wisconsin, the penalty is a minimum ten-day jail sentence and a fine from $100 to $400, whereas in West Virginia the penalty is a mandatory minimum six-month jail term and a fine of not less than $100 nor more than $500.

**17.** *See e.g., Jeffcoat v. Alaska, supra,* 732 P.2d 1073 (1987); *State v. Williams,* 144 Ariz. 487,

698 P.2d 732 (1985); *State v. Keihn, supra; State v. McCallum, supra.*

**18.** The application of the holding reached today is limited to "cases in litigation or on appeal where the same legal point has been preserved." Syl. Pt. 3, *State v. Gangwer, infra.*

**19.** Discussed *supra*, Section III, Part B.

In *Nichols,* the primary issue presented regarding prior convictions was whether a criminal defendant was entitled to stipulate to such convictions, in order to remove the collateral offenses from jury consideration, despite the fact that the prior convictions were necessary elements of the crime charged.[20] In the event that his stipulation argument failed, Mr. Nichols proposed the alternative of a bifurcated trial so as to separate jury consideration of the underlying offense from the prior conviction evidence. Although this Court provided relief in *Nichols* based on the stipulation issue, we determined it necessary to also address the bifurcation issue "because to do otherwise suggests that a defendant is being forced to stipulate to a prior conviction status element or suffer having the jury be informed of the prior conviction." 208 W.Va. at 446, 541 S.E.2d at 324. We thereafter established the procedure by which criminal defendants who seek to challenge collateral conviction status elements separately from the underlying charge may obtain a bifurcated proceeding. This procedure, as set forth in syllabus points four and five of *Nichols,* provides that, after a request for bifurcation is made by a defendant, a trial court is to conduct a hearing at which the defendant carries the burden of producing satisfactory evidence to constitute a meritorious claim which defeats the validity of a prior conviction. The decision regarding the bifurcation request is within the trial court's discretion. 208 W.Va. at 434–35, 541 S.E.2d at 312–13.

*Nichols* did not present us with the clear opportunity to consider the application of the announced procedure, although we had occasion to reflect and comment on it to some degree in *State v. Hulbert,* 209 W.Va. 217, 544 S.E.2d 919 (2001). In *Hulbert* we recognized that *Nichols* established that prior convictions constitute status elements of offenses such as third offense domestic assault or domestic battery and as elements of the charged offense are proven as part of the guilt/innocence stage of a trial. We observed

that "[u]nder longstanding rules of criminal law, the burden of alleging and proving each element of a criminal offense beyond a reasonable doubt rests with the state and may not be shifted to the defendant." 209 W.Va. at 227, 544 S.E.2d at 929 (citations omitted).

The present case raises a related concern involving the *Nichols* procedure. In essence, if a criminal defendant wishes to garner the benefit of bifurcation, he or she shoulders the burden of going forward with evidence in advance of the State presenting its case. Consequently, the bifurcation procedure provides the State with the advantage of previewing the criminal defendant's evidence on a material element and denies the defendant a fair trial based on the principles of our criminal justice system. Such a result was not foreseen in *Nichols,* as our expressed intention in establishing the procedure was to avoid the impression "that a defendant is being forced to stipulate to a prior conviction status element." 208 W.Va. at 446, 541 S.E.2d at 324. However, the practical result of the bifurcation procedure set forth in *Nichols* does little to eliminate this impression since it poses such a significant disincentive to the defendant who wishes to obtain a bifurcated proceeding in these cases. Defining what constitutes a meritorious claim as suggested by Appellant would not remedy the problem. Therefore, the *Nichols* bifurcation procedure as it relates to challenges to prior convictions requires alteration so as to honor the criminal defendant's right to a fair trial. We remain firm in our belief that a criminal defendant charged with a status element offense who wishes to contest the validity of a prior conviction should have the opportunity to do so in a bifurcated proceeding so as to allay the enhanced risk of prejudice presented by unitary trial. Consequently, we hold that a trial court must grant bifurcation in all cases tried before a jury in which a criminal defendant seeks to contest the validity of an alleged prior conviction as a status element and timely requests that the jury consider the issue of

---

**20.** In *State v. Hopkins,* 192 W.Va. 483, 453 S.E.2d 317 (1994), it was decided that evidence of prior convictions must be presented to the jury during the trial of the underlying offense because the prior convictions are necessary elements of

the crime charged. This holding was modified by *Nichols* to the extent that when a charged defendant stipulates to the prior convictions, evidence of such convictions is not admissible in the trial of the underlying offense.

prior conviction separately from the issue of the underlying charge. To the extent that our decision in *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999), conflicts with this holding it is hereby modified.

In reaching this decision, we realize that bifurcated trials may appear less efficient than other alternatives and pose an additional demand on the time of our busy trial courts. However, as this Court stated in *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996): "[E]fficiency cannot be permitted to prevail at the expense of justice. The obligation of the courts to deliver justice is paramount ...." *Id.* at 314, 470 S.E.2d at 633. We also appreciate the relatively short period of time which has elapsed since we handed down our decision in *Nichols*. Our departure from strict application of the doctrine of stare decisis is obviously warranted under the circumstances of this case in order to safeguard a criminal defendant's right to a fair trial. As we said in *Nichols*, " '[t]he binding effect of a judicial opinion on future generations should not be based on the number of years that have passed since the opinion was issued by a Court, but rather should be found in the strength of the Court's reasoning in the opinion, and the fairness of its result.' *State v. Morris*, 203 W.Va. 504, 510, 509 S.E.2d 327, 333 (1998) (Starcher, J., dissenting)." 208 W.Va. at 445 n. 23, 541 S.E.2d at 323 n. 23.

█ In view of the foregoing, the judgment involving the third offense DUI conviction is reversed and the case is remanded for a new, bifurcated trial.[21]

## F. Lesser Included Offense Instructions

█ Appellant's final assignment of error, involving the trial court's refusal to instruct the jury that first and second offense DUI are lesser included offenses of a third offense DUI, is essentially moot in light of our ruling with respect to the DUI charge. We note, however, for guidance to the trial court upon remand, in the context of the prior conviction phase of the bifurcated proceeding, that the standard we apply in determining whether a criminal defendant is entitled to a requested lesser included offense instruction as summarized in syllabus point one, in part, of *State v. Jones*, 174 W.Va. 700, 329 S.E.2d 65 (1985), involves the following two-part inquiry:

> The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense. *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982).

## IV. Conclusion

Based upon the foregoing, Appellant's convictions and sentences for first offense driving revoked for DUI and third offense DUI are reversed and the case is remanded to the Circuit Court of Berkeley County for further proceedings consistent with this opinion.

Reversed and remanded.

STARCHER, Justice, concurs.

DAVIS, J., concurring, in part; and dissenting, in part.

(Filed May 20, 2003)

Robert Joel McCraine challenged his convictions for third offense DUI (felony) and driving while his license was revoked (misdemeanor). The majority opinion reversed both convictions. The majority opinion concluded that the felony and misdemeanor charges should have been severed, with the felony being tried in circuit court and the misdemeanor being tried in magistrate court. I concur in this ruling because that issue was controlled by *State ex rel. Games–Neely v. Sanders*, 211 W.Va. 297, 565 S.E.2d 419 (2002). The majority opinion also concluded that "knowledge" of a revoked license should

---

21. Since our decision regarding bifurcation is a procedural requirement and "prophylactic standard[ ] designed to safeguard the right of every [similarly situated] criminal defendant to" a fair trial, it has limited retroactive effect. *State v. Blake*, 197 W.Va. 700, 712, 478 S.E.2d 550, 562

(1996). The application of our decision today, therefore, is limited to the retrial of Appellant and to cases in litigation or on appeal during the pendency of this appeal in which the issue has been properly preserved. Syl. Pt. 3, *State v. Gangwer, infra.*

be an element of the misdemeanor offense. I likewise concur in that ruling. Finally, the majority opinion has ruled that it is mandatory for trial courts to bifurcate the substantive charge of an offense from the status element of the offense. For the reasons set out below, I dissent from the majority's resolution of the latter issue.

### A. Bifurcation Should Not Be Mandatory for a Status Element

In *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999), this Court was asked to determine whether trial courts were required to accept a defendant's stipulation to the status element of an offense so as to prohibit a jury from hearing evidence regarding the status element. We resolved the issue in syllabus point 3 of *Nichols*, in part, by ruling that "[i]f a defendant makes an offer to stipulate to a prior conviction(s) that is a status element of an offense, the trial court must permit such stipulation and preclude the state from presenting any evidence to the jury regarding the stipulated prior conviction(s)."

Additionally, *Nichols* addressed the very rare instance wherein a defendant challenges being identified as the person having committed the status element offense. *Nichols* was hesitant to force a defendant in such a situation to have a unitary trial. However, *Nichols* was also cognizant of the fact that rarely do defendants ever have a legitimate basis to assert that they are not the person identified as having been convicted of a status element offense. Confronted with the rarity of such a challenge, the Court determined in *Nichols* that an opportunity for a bifurcated trial should exist for those rare instances when a legitimate status offense challenge could be made. Consequently, we held in syllabus point 4 of *Nichols*, in part, that:

The decision of whether to bifurcate these issues is within the discretion of the trial court. In exercising this discretion, a trial court should hold a hearing for the purpose of determining whether the defendant has a meritorious claim that challenges the legitimacy of the prior conviction. If the trial court is satisfied that the defendant's challenge has merit, then a bifurcated proceeding should be permitted. However, should the trial court determine that the defendant's claim lacks any relevant and sufficient evidentiary support, bifurcation should be denied and a unitary trial held.

The Court's majority has now overruled *Nichols'* discretionary bifurcation. The majority's opinion in this case requires mandatory bifurcation whenever a defendant requests bifurcation. As a result of the majority decision, every defendant convicted of an offense having a status element should now be strongly motivated to demand a bifurcated trial. I so conclude because a defendant will have nothing to lose by requiring the State to have a separate jury determine the issue. I have little doubt in further concluding in an overwhelming majority of all such cases, defendants will not prevail. Consequently, the majority's decision has encouraged a terrible waste of judicial resources. Simply put, the majority is clogging an already overburdened judicial system. In an attempt to support their position, the majority decision asserts that the *Nichols* approach, which requires a defendant to provide evidence of a meritorious claim to convince a judge to permit a bifurcated proceeding, "provides the State with the advantage of previewing the criminal defendant's evidence on a material issue" and is therefore unfair. This is a legally unsupportable justification.[1]

---

1. I have found no court in the country that requires mandatory bifurcation of the status element of an offense. In fact, prior to this Court's adoption of the position taken in *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), that permits stipulation of the status element of an offense, it was mandatory for status elements to go to the jury in a unitary trial. In *Nichols* we determined that *Old Chief's* stipulation requirement was a fair and judicious balance of the rights of a defendant and the state. In adopting the stipulation mechanism, this Court clearly understood that *Old Chief* did not impose a constitutional rule on states. In other words, we could have rejected *Old Chief*. *See State v. Ball*, 756 So.2d 275, 278 (La.1999) ("We conclude that *Old Chief* is not controlling and decline to follow it[.]"). In adopting *Old Chief*, the Court in *Nichols* went further and addressed an issue that *Old Chief* did

A good illustration of how *Nichols* is consistent with exiting law can be found by looking at the alibi defense. Under the existing court rules, should a defendant seek to use the affirmative defense of alibi, the defendant is required to provide the prosecutor with certain information before trial. Under Rule 12.1(a) of the Rules of Criminal Procedure a defendant, prior to trial, must inform the prosecutor of "the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi." Further, if a defendant fails to make such a disclosure, under Rule 12.1(d) "the court may exclude the testimony of an undisclosed witness offered by such party as to the defendant's absence from ... the scene of the alleged offense."[2] In other words, I fail to see how a defendant is prejudiced by having to present legitimate evidence to a trial judge that he/she is not the person named in a document as having been convicted of a prior offense when there is no prejudice in requiring a defendant to give the State information that the defendant will use at trial to show that he/she was not at the scene of a crime.

Under *Nichols*, trial courts were allowed to screen out frivolous challenges to identification in status element offenses. As I indicated, I believe that in the vast majority of such cases the challenges will be frivolous. Unfortunately, the majority opinion has turned logic on its head by instituting separate jury trials for frivolous challenges to identification in status element offenses.[3]

### B. The Majority Decision Completely Disregards Stare Decisis

In syllabus point 2 of *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 207 S.E.2d 169 (1974), this Court held:

An appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law.

*See also Hilton v. South Carolina Pub. Rys. Comm'n*, 502 U.S. 197, 202, 112 S.Ct. 560, 563, 116 L.Ed.2d 560 (1991) ("[W]e will not depart from the doctrine of stare decisis without some compelling justification.") (citation omitted). It has been aptly noted that "[c]asting aside well-settled law for no reason

not address. That is, we carved out a procedure in which a trial judge had discretion to permit bifurcation and a separate trial on the status element of an offense. No other court that has adopted *Old Chief* permits bifurcation and separate trials for the status element of an offense. The reason that no court has seen the need to permit bifurcation, is because of the extremely rare possibility that a defendant will ever have a meritorious claim of mistaken identification in an abstract showing the defendant was previously convicted of a crime.

2. Moreover, the requirement in *Nichols* was consistent with the requirement imposed by Justice Cleckley in *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996). That is, under *LaRock* a defendant in a first degree murder prosecution does not have an automatic right to bifurcate the issue of guilt from the issue of mercy. In syllabus point 5 of *LaRock*, Justice Cleckley imposed the following burden on a defendant seeking bifurcation:

The burden of persuasion is placed upon the shoulders of the party moving for bifurcation. *A trial judge may insist on an explanation from the moving party as to why bifurcation is need-*

*ed.* If the explanation reveals that the integrity of the adversarial process which depends upon the truth-determining function of the trial process would be harmed in a unitary trial, it would be entirely consistent with a trial court's authority to grant the bifurcation motion.

(Emphasis added.) Under *LaRock*, this Court established discretionary bifurcation on the issue of guilt and mercy. *See* Syl. pt. 4, *LaRock* ("A trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy."). The majority's decision to require mandatory bifurcation and trial of the status element of an offense has implicitly overruled *LaRock's* discretionary bifurcation in first degree murder prosecutions.

3. In fact, the evidence in this case established that Mr. McCraine has no legitimate basis to challenge the issue of whether he was the person named in the prior convictions. His real challenge was that one of his prior convictions should be set aside because he did not knowingly waive his right to counsel. This was purely a legal question for the trial court. The trial court ruled against Mr. McCraine on this issue. This Court properly affirmed that ruling.

other than to substitute judge-made law is particularly reprehensible in the area of criminal law where clarity and fairness are overriding concerns." *State v. Anderson,* 212 W.Va. 761, 767, 575 S.E.2d 371, 377 (2002) (Albright, J., concurring). The majority decision to overrule *Nichols* is reprehensible. Moreover, "[t]he author of the majority opinion has, in effect, 'stood stare decisis on its ear.'" *A & M Props., Inc. v. Norfolk S. Corp.,* 203 W.Va. 189, 197, 506 S.E.2d 632, 640 (1998) (Starcher, J., dissenting).

"As a general rule, the principle of stare decisis directs us to adhere ... to the holdings of our prior cases[.]" *County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter,* 492 U.S. 573, 668, 109 S.Ct. 3086, 3141, 106 L.Ed.2d 472 (1989) (Kennedy, J., concurring and dissenting). *See also Banker v. Banker,* 196 W.Va. 535, 546 n. 13, 474 S.E.2d 465, 476 n. 13 (1996) ("Stare decisis is the policy of the court to stand by precedent."). "Stare decisis rests upon the important principle that the law by which people are governed should be 'fixed, definite, and known,' and not subject to frequent modification in the absence of compelling reasons." *Bradshaw v. Soulsby,* 210 W.Va. 682, 690, 558 S.E.2d 681, 689 (2001) (Maynard, J., dissenting), quoting *Booth v. Sims,* 193 W.Va. 323, 350 n. 14, 456 S.E.2d 167, 194 n. 14 (1995).

No compelling reason existed to overrule *Nichols.* The majority opinion did not provide *any* legitimate justification for ignoring stare decisis and overturning *Nichols.* As I have pointed out, *Nichols* imposed no prejudice on a defendant by requiring the defendant to present credible evidence to the trial court before precious judicial resources were expended in a separate trial to determine if a defendant was, in fact, the same person named in a prior conviction.

For the reasons given, I concur in part and dissent in part.

I am authorized to state the Justice MAYNARD joins me in this separate opinion.